BOSTON STORE v. SCHLEUTER.

Opinion delivered November 30, 1908.

88    213
f88    559

1. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL.—Where a written contract for making alterations and additions to a certain building was unambiguous, and, taken in connection with the plans and specifications, contained all the elements to which the bids referred, it was not error to exclude the written bids upon which the contract was based. (Page 221.)

2. BUILDING CONTRACT—CONCLUSIVENESS OF ARCHITECT'S DECISION.—Where a building contract stipulated that the work should be done "to the perfect satisfaction of the architect," and that the architect was at liberty "to make any deviation from or alteration in the plan, form, construction, detail and execution of the work," "to reject the whole or any part," and if the work was "retarded unnecessarily" to furnish labor and materials to facilitate the completion of the work, a provision that the architect's opinion, certificate, report and decision should be binding on the contractor meant that the architect's decision should be binding only as to those matters which were within the scope of his authority, and did not contemplate that his decision as to the amount which was due to the contractor should be conclusive. (Page 221.)

3. SAME—MUTUALITY.—Notwithstanding a building contract stipulates that the architect's decision shall be binding upon the contractor, without saying whether it shall be binding on the owner of the building, his decision concerning matters properly submitted to him under the contract is binding upon both parties. (Page 223.)

4. SAME—CONCLUSIVENESS OF ARCHITECT'S DECISION.—A stipulation in a building contract that the contractor shall be bound by the architect's decision is binding upon both parties, in the absence of fraud or such gross mistake as necessarily implies bad faith on part of the architect. (Page 224.)

5. SAME—EFFECT OF ARCHITECT'S BAD FAITH.—Where there was evidence tending to prove that the delay of a contractor in completing work which was to be finished within a certain time was due to fraud or bad faith on part of the architect, this issue was properly submitted to the jury. (Page 224.)

6. SAME—EFFECT OF ARCHITECT'S HONEST MISTAKE.—Where a building contract stipulated for liquidated damages for delay in completion of the work, it was error to instruct that if the delay in finishing the work was caused by the architect the contractor was not liable for delay unless the act of the architect in causing the delay was in good faith and necessary; on the contrary, if the architect, exercising ordinary care and honest judgment, made a mistake in directing something that was unnecessary, this would not prevent the contractor from being liable for delay. (Page 224.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellee sued appellant, alleging: "That on September 15, 1906, the plaintiff and the defendant entered into a contract for certain alterations and additions to be made to the building known as the Boston Store and the building adjoining said

Boston Store on the west side thereof, situated in the city of Ft. Smith, Arkansas; that "the plaintiff agreed to furnish all materials with the exceptions of the plate glass and iron, which was agreed to be furnished by the Boston Store; and the plaintiff further agreed to do all of said work for the sum of nine hundred and seventeen ($917.00) dollars, and the defendant agreed to pay the plaintiff the sum of $917, and further to pay for the cost of all additions to said work." That "the plaintiff has constructed and completed the following additions and alterations to the work mentioned in said contract:

Extra windows........................$45.00
Extra flooring......................... 6.50
Extra work for extending ceiling not provided for in
    the contract........................... 2.85
Putting in two panels not provided for in the con-
    tract ................................. 2.00

Making a total of $973.35; that the defendant has paid to the plaintiff on said contract the sum of $625.00, leaving a balance due from the defendant to plaintiff of $348.35." The complaint further alleges that the plaintiff has fully and completely performed the said contract, and has made the alterations and additions to said building, and said work has been approved and accepted by the architect and superintendent, A. Klingensmith, and has also been accepted and approved by the defendant, and defendant refuses to pay said sum." The prayer was for $348.35 and interest.

The appellant answered, and, after admitting the contract, states: "This defendant denies that plaintiff has fully and completely performed said contract, and has made the alterations and additions to said building and said work at the time and in the manner prescribed by said contract; and denies said work has been approved and accepted by the architect and superintendent, A. Klingensmith; and denies that the same has also been accepted and approved by the defendant; admits that the defendant refused to pay said sum or any other sum whatsoever because the terms and conditions of the aforesaid contract had not been observed and complied with, and because said architect and superintendent has not accepted or approved same. And defendant denies that the plaintiff is entitled to judgment against

this defendant for the sum of $348.35, or in any other sum or amount whatsoever, with interest and costs.

"The appellant by way of further defense, and for cross complaint, alleged: That under and by virtue of the written contract made and entered into by and between the plaintiff and this defendant on September 15, 1906, it is provided in said contract as follows, to-wit: 'The finishing of said works, including all alterations and additions in said contract provided, or hereafter agreed upon, is to be proceeded with with all reasonable dispatch, and the same shall be completed and delivered up to said party of the first part, in perfect good order and condition, fit for use and occupation, on or before eight days after the delivery of the glass on the ground as per specifications; it being agreed that the said party of the second part shall forfeit the sum of twenty-five dollars for every day expiring after that day, before the completion and delivery of said work, as aforesaid, to the said parties of the first part; and this condition not to be made or rendered void by any alteration or additional work being performed, but in such case the time shall be extended as may be necessary for the performance of such alteration or additional work.'

"That the iron work and glass was delivered on the ground as per specifications on October 6, 1906, and that the work of alterations and additions were not completed so that the building could be occupied by the defendant until November 3, 1906; that, under the terms and conditions of the aforesaid contract, after allowing plaintiff eight days after the delivery of the iron and plate glass on the ground, excluding October 6, 1906, and all Sundays, that the work provided for should have been finished and completed on October 16, 1906; that, as provided for in said written contract for such delay, on failing and neglecting to comply with the said contract, the plaintiff has forfeited the sum of $25 for each and every day that lapsed after the 16th day of October, 1906, a period of sixteen days, which at $25 per day amounts to $400." The appellant then alleges other items of damage growing out of the alleged failure of appellee to comply with his contract, which, together with the alleged $400, amounts to the sum of $615. The prayer of appellant's cross-complaint was that so much of the said sum of $615.15 may be set off against any claim which the said plaintiff may have against this

defendant as equals the same, and that the said defendant may have judgment against the said plaintiff for the balance. All the material allegations of the cross-complaint were denied.

The appellee read in evidence the contract and the plans and specifications which, by provision of the contract, were made a part thereof. The appellant only contends here that the contract was not performed by appellee within the time specified therein. We will therefore only set forth such portions of the contract as may throw light upon that issue, when taken in connection with the other evidence. The contract contains these provisions:

"The finishing of said works, including all alterations and additions in said contract provided, or hereafter agreed upon, is to be proceeded with with all reasonable dispatch, and the same shall be completed and delivered up to said party of the first part, in perfect good order and condition, fit for use and occupation, on or before the eight days after the delivery of the iron and glass on the ground as per specifications; it being agreed that the said party of the second part shall forfeit the sum of twenty-five dollars for every day expiring after that day before the completion and delivery of said work, as aforesaid, to the said parties of the first part, and this condition not to be made or rendered void by any alteration or additional work being performed, but in such case the time shall be extended as may be necessary for the performance of such alteration or additional work.

"The architects' and superintendents' opinion, certificate, report and decision on all matters to be binding and conclusive on the party of the second part, and in case the said party of the second part should fail or refuse to fulfill the orders of said architects and superintendents, then said architects and superintendents shall have full power and lawful right to terminate forthwith any further work by said party of the second part under this contract, and to have the work done by other parties at the cost of said party of the second part and his sureties.

"The said parties of the first part agree and bind themselves, for and in consideration of the faithful performance of said work as aforesaid, to pay unto the said party of the second part the sum of nine hundred and seventeen dollars ($917.00) upon certificate of the architects, issued from time to time in the follow-

ing manner, to-wit: During the progress of the work, for amounts aggregating eighty-five per cent. of the value of the labor performed and materials furnished, and in the building, forming part of its actual construction; and for the remaining fifteen per cent. upon the completion and delivery of said work by the said party of the second part, and its acceptance by the architects and superintendents."

The plans and specifications among other things provided:

"The work to commence within twenty-four hours after contract was awarded and to be rushed to completion as rapidly as possible with two forces of workmen, one working in day time and one working at night, and finished within eight days after the iron and glass work is on the ground. * * * The contractor in all cases to be held liable for the amount set forth as liquidated damages, unless he shall certify to the architect in writing, within six hours after stopping the work, that it is no longer possible to proceed without certain items of material specified to be furnished by the Boston Store. In case of such certification by the contractor the architect shall at once examine the work, and his decision as to the necessity of stopping the work shall be final and binding on all parties. If the bid for working two shifts of men is accepted, the work to be finished within eight days after all material to be furnished by the Boston Store is on the ground. If the bid for working one shift is accepted, the work shall be finished within twelve days after the material is on the ground."

The appellee testified that he had performed his work according to the contract, and that same had been accepted by the architect in writing. The appellant offered in evidence appellee's bid for this work, which bid was as follows:

"Fort Smith, Ark., September 13, 1906.

"I agree to remodel building for Boston Store according to plans and specifications for the sum of $892.

[Signed]          .          "Fred Schleuter:

"If I work at night, add $50."

The court excluded said testimony, for which action by the court the appellant excepted.

Appellant offered in evidence a certificate of the architect, given on completion of the building, showing the status of the

account between appellant and appellee. The court excluded the testimony, to which ruling appellant excepted. The certificate was to the effect that under the terms of the contract between appellant and appellee the liquidated damages that had accrued to appellant amounted to $400, *i. e.,* for sixteen days at $25 per day, and that the account between the parties, giving appellee credit for the full amount to which he was entitled under the contract, towit, $968.50, and charging him with the amount he had received and the amount he owed for labor and material furnished him by appellant, towit, $654.15, together with the liquidated damages on overtime *supra* $400, left appellee indebted to appellant in the sum of $85.15.

A witness by the name of Ragland testified substantially as follows: "I am a house-moving contractor; was employed by the plaintiff to shore up the walls at the Boston Store. I did this work in the proper way before I was interfered with by the architect. (The defendant objected to this testimony; his objections were overruled, and he saved his exception.) In my judgment the work was properly done; the architect interfered, made us change it. Part of it was changed back like it was at first. It was changed about three times. He ordered it changed two different ways; we put that like he instructed, and he came back, and said we did not have it right, and had to change it again, and then came back, and had us cut holes through the floor. In my opinion the wall was safe at first. (The defendant saved its exceptions to the above testimony.) A part of this was safe and a part not. We changed it back nearly like we had it at first. Could not say exactly how long we were delayed on account of these changes, but about two weeks or over."

This and other testimony to the same effect was admitted over the objection of appellant, and he excepted to the ruling of the court. The appellant adduced evidence which tended to prove that the appellee had not placed the props so as to give sufficient support to the wall resting upon them, and that the architect had ordered the changes in the props to be made by appellee, in order to make the work safe. The proof on behalf of appellant tended to show that the changes which appellee alleges delayed him were directed by the architect because he considered them necessary to make the building secure.

At the request of appellee, the court gave among others the following instruction:

"7. The court instructs the jury that if the delay, if there was any, was due to the failure of the defendant to do its part of the contract, or if it was due to the action of the defendant, either through itself or the architect, stopping the work of plaintiff, then there should be nothing allowed defendant for any such delay so caused by said defendant, unless the act of the architect was in good faith in line of his duties of supervising the work, and was necessary act in the supervision of the work."

And the court refused to grant, among others, the following prayers by appellant.

"8. If you believe from the evidence that the signed agreement between plaintiff and defendant provided that the architect's certificate on all matters in said contract should be binding or conclusive upon the plaintiff, then you are instructed that the plaintiff is bound by the report and certificate of the architect in evidence in this case, and your verdict must be in favor of the Boston Store against Fred Schleuter in the sum of $85.15 with interest from the 16th day of October, 1906, unless you further find that said certificate was procured by fraud from the said architect.

"10. Under the law and evidence in this case, it was the duty of the architect, A. Klingensmith, to supervise the work done by plaintiff, Fred Schleuter, and to see that same was done in accordance with the contract, plans and specifications. And the said A. Klingensmith, by the terms of the agreement between plaintiff and defendant, had the exclusive right to pass upon said work, and the plaintiff, Fred Schleuter, can not defeat the payment of the forfeit of $25 per day for delays, if any, which were caused by said architect in supervising said work."

The court modified prayer number ten by inserting the words "and, in the absence of fraud upon the architect's part, his findings are binding upon both plaintiff and defendant."

The appellant duly excepted to the rulings of the court in granting and refusing prayers for instructions.

The jury returned a verdict in favor of the appellee for $319.20. Judgment was entered accordingly, and this appeal followed.

*Brizzolara & Fitzhugh,* for appellant.

1. Court erred in refusing to admit the two written bids of plaintiff to do the work.

2. It erred in excluding the certificate of the architect given on completion of the building.

3. The court erred in giving instruction seven for plaintiff. 48 Ark. 522.

4. Mere payment of sums on account before completion of the work is not a waiver of the condition that an architect's certificate shall be given, nor is the mere taking of possession of the house after completion. Lloyd on Buildings, § § 19, 20, a.

*Read & McDonough,* for appellee.

1. Provisions in building contracts of this kind must be binding upon both parties, or else they are binding upon neither. Clark on Contracts, 165.

2. Under contracts where it is provided that the architect's decision shall be binding upon *both* parties, in the absence of fraud, they are so binding. 83 Ark. 140.

3. No certificate in writing was necessary. The appellee was proceeding with the work with all possible speed. The architect stopped him, and the notice was unnecessary. 51 Ark. 302.

4. There was no provision in the contract by which the time for the completion of the contract was fixed. Hence the rule is—a reasonable time. 32 Me. 515.; Clark on Cont. p. 31-596.

WOOD, J. (after stating the facts.) We will dispose of the assignments of error in the order presented by appellant's counsel.

1. The court did not err in excluding the written bids that were offered in evidence. These were prior to and no part of the written contract. The contract was unambiguous, and it was complete as to the time and manner for the performance of the work, as well as the consideration to be paid therefor. The parties were bound by the terms of the contract, which, taken in connection with the plans and specifications, contained all the elements to which the bids referred.

2. The court did not err in excluding the certificate of

the architect. There is no provision in the contract making the architect the arbiter of all matters of difference between the parties on final settlement after the completion of the work. The certificate of the architect showed what was due from appellee to appellant, according to his opinion and his statement of the account between them. But, when all the provisions of the contract with reference to the architect's powers and duties are construed, it will be observed that he had no power to certify as to what was due from appellee to appellant under the contract. The contract provides that "the achitects' and superintendents' opinion, certificate, report and decision on all matters to be binding and conclusive on the party of the second part." The words "on all matters" used in this clause of course refers to all the matters about which the architect, under the contract, was authorized to make a certificate. The duty of the architects under the contract was to see that the work was done according to the plans and specifications which they had furnished, and which they were authorized to furnish as the work progressed. The work was to be done to "the perfect satisfaction and approbation of the architects," and the architects were "at liberty to make any deviation from or alteration in the plan, form, construction, detail and execution" of the work. They had "full power and lawful authority to reject the whole or any part." If their orders were not fulfilled, they had power to "terminate forthwith further work by party of second part (appellee) and to have the work done by other parties at his cost." If they believed the work was "retarded unnecessarily," they could, as often as appeared to them necessary, "furnish such labor and materials as they might deem necessary to facilitate the completion of the work." They were authorized "during the progress of the work" to issue certificates "for amounts aggregating 85 per cent. of the value of the labor performed and material furnished," and for the remaining 15 per cent. upon the completion and delivery of said work and its acceptance by them. The above were "all the matters" upon which the architect might give his "opinion, certificate, report and decision." But the certificate which appellant offered in evidence, and which it sought by its prayer number eight to have made conclusive against appellee, is beyond the scope of

any authority given the architect by the terms of the contract. The rulings of the court in rejecting the certificate and refusing the prayer were correct.

But we do not concur in the view of counsel for appellee "that the architect's decision in every instance is null and void for the reason that it is in no manner binding upon the Boston Store." The architect was the agent of appellant vested with full power to act for it, and in all matters coming within the purview of his powers and duties as specified in the various provisions of the contract, his "opinion, certificate, report and decision" were as binding on appellant as appellee. This notwithstanding the contract in express terms specified they were "binding and conclusive on the party of the second part." The appellant could not escape the binding force and effect of the decision of one whom it expressly appointed and authorized to make decisions for it. The architect, in the matters designated for him to pass upon in the contract, was the *alter ego* of appellant.' The language used by the Supreme Court of Texas in *Boettler* v. *Tendrick,* 73 Tex. 488, is apposite here: "The owner did not undertake to supervise the work himself and to raise objections to workmanship or material, but selected persons of skill and experience to do this for him, and those persons were made the arbiters, and necessarily in the discharge of their duty to their employer were compelled from time to time to pass upon the workmanship and material. * * * The right of the builder to exercise his own judgment was subordinated to the judgment of the architects to whom power was given to determine what was proper workmanship or fit material," etc. The decisions of the architect concerning these and the other matters designated ought to be held binding upon both parties. As Mr. Wharton says: "The owner has no right to complain, since the architect was selected by him and charged by him with this very power; the builder has no right to complain since he took the work on this very condition." Wharton, Con. 594. Under the provisions of this contract, there is no doubt that the decision or opinion of the architect concerning the manner of the execution of the work, the necessity for changes in the method by which appellee was propping up the walls, and all alterations that were necessary,

was binding upon the parties to the contract. The acceptance of the work by the architect was necessary before appellee could recover. Had the certificate of the architect been confined to these matters, it would have been admissible. It embraced other things, and in the form presented was not admissible. It was offered as a whole.

3 and 4. Notwithstanding the contract makes the certificate, report, opinion, decision of the architect conclusive on the parties, the law writes into this provision that the conduct of the architect must be free from fraud. Fraud on his part destroys the effect of the provision. Therefore, if the architect fails to exercise his honest judgment, or makes such gross mistakes as necessarily imply bad faith, his decision, report, certificate and opinion are not binding on the parties to the contract. *Hot Springs Ry. Co.* v. *Maher,* 48 Ark. 522; *Ozan Lumber Co.* v. *Haynes,* 68 Ark. 185; *Ark-Mo Zinc Co.* v. *Patterson,* 79 Ark. 506; *Carlile* v. *Corrigan,* 83 Ark. 140; *Kihlberg* v. *United States,* 97 U. S. 398; *Sweeney* v. *United States,* 109 U. S. 618; *Martinsburg & Potomac Rd. Co.* v. *March,* 114 U. S. 549; Lloyd, Buildings, p. 32, § 22.

It was a question for the jury under the evidence to determine whether the delay in completing the work according to the contract was caused by any fraud or bad faith upon the part of the architect in directing and supervising the work as it progressed. The testimony of Ragland and other witnesses was relevant to this issue and was competent evidence. It is not within the province of this court to pass upon its weight. The court did not err in admitting the testimony.

5. In the seventh instruction the court in effect told the jury that if the delay in finishing the work was caused by the architect, then appellee was entitled to recover, unless the act of the architect in causing the delay was in good faith and necessary. In other words, appellant could not claim any liquidated damages for delay caused by his architect, unless the delay was a necessary act in the supervision of the work, and also was caused in good faith on the part of the architect. This added a burden upon appellant that neither the contract nor the law authorized. All that was necessary, as we have seen, under the contract, was for the architect to act in good

faith and use his honest judgment. If he did this, appellant got the benefit of the delay, whether it was caused by a necessary act in supervising the work or not. If the architect, exercising ordinary care and honest judgment, made a mistake in directing something to be done that was entirely unnecessary, still under the contract that would not defeat appellant's right to recover liquidated damages for delay in completing the work within the time specified.

It was not reversible error to give prayer number ten as modified, but the law would have been more accurately stated by simply adding the words "in the absence of fraud upon the architect's part," after the word "Schleuter" where it last appears in the prayer, making the instruction to read as follows:

"Under the law and evidence in this case, it was the duty of the architect, A. Klingensmith, to supervise the work done by plaintiff, Fred Schleuter, and to see that same was done in accordance with the contract, plans and specifications. And the said A. Klingensmith, by the terms of the agreement between plaintiff and defendant, had the exclusive right to pass upon said work, and the plaintiff, Fred Schleuter, in the absence of fraud on the architect's part, cannot defeat the payment of the forfeit of $25.00 per day for delays, if any, which were caused by said architect in supervising said work."

The instruction was in conflict with number 7.

For the error indicated the judgment is reversed, and the cause remanded for new trial.