HATFIELD SPECIAL SCHOOL DISTRICT *v.* KNIGHT.

Opinion delivered March 9, 1914.

1. CONTRACTS—BUILDING CONTRACT—PLANS AND SPECIFICATIONS—BREACH
   —BURDEN OF PROOF.—Where the contract for the building of a school-house provided that the decision of the architect as to whether

the schoolhouse was built according to the plans and specifications should be binding on the parties, the burden was on the plaintiff to show by proper evidence that the decision of the architect, in matters complained of, was fraudulently made, and to meet this burden, it is competent for plaintiff to show by proper evidence that he had done the work in all particulars as called for by the contract.    (Page 88.)

2. BUILDING CONTRACT—ERASURE—BURDEN OF PROOF.—The burden is upon a contractor to show that an erasure and change in a building contract was made after the same had been executed. (Page 89.)

3. BUILDING CONTRACT—IMPROPER CONSTRUCTION.—Where a contract called for the construction of a metal cornice, and the architect ordered the same taken out for faulty construction, the owner is entitled to recover the reasonable cost of putting in a new cornice and to have that amount deducted from the contract price. (Page 90.)

4. BUILDING CONTRACT—CHANGES IN PLANS—DAMAGES.—When a contractor made a change in the construction of a building at the request of the architect, which the latter agreed to pay, the same will not be charged against the owner.    (Page 91.)

Appeal from Polk Circuit Court; *Jefferson. T. Cowling*, Judge; reversed.

STATEMENT BY THE COURT.

C. W. Knight instituted this action in the circuit court against Hatfield Special School District and V. B. VanDyke to recover the sum of $2,160.45, alleged to be the balance due him for erecting the Hatfield High School building. The defendant, Hatfield Special School District, admitted that it was indebted to plaintiff in the sum of $332.38, and offered to confess judgment for that amount, but denied the other material allegations of the complaint. The facts are substantially as follows:

The directors of Hatfield Special School District advertised for bids for the construction of a school building according to written plans and specifications prepared by V. B. VanDyke, its architect. C. W. Knight bid the sum of $7,090.00, and that being the lowest and best bid, the same was accepted by the directors on June 6, 1912. A written contract was afterward prepared and executed by the parties on June 15, 1912, and the written plans and

specifications were made a part of the contract. The contract, among other things, contained the following:

"Art. 1. The contractor shall provide all material and do all work as per plans and specifications identified by signature of the parties.

"Art. 2. The work shall be done under the supervision of the architect, V. B. VanDyke, and his decision as to the meaning of drawings and specifications shall be final. Additional drawings, if needed, shall be furnished by the architect, and all parties shall abide thereby in so far as they conform to the purpose and intent of drawings and specifications mentioned in article 1.

"Art. 3. No alterations shall be made except by written order of the architect, amount to be paid for same to be stated therein.

"Art. 4. In twenty-four hours after receiving notice from the architect, the contractor shall remove all materials condemned, worked or unworked, and take down all work condemned as improper and make it good.

"Art. 5. Should the contractor fail to supply sufficient workmen or to prosecute the work with diligence, or to perform any agreement, on such failure or refusal being certified by the architect the school district may, after three days' notice to the contractor, provide labor or materials at the expense of the contractor, and, if the architect certifies such failure sufficient therefor, the district may take over the work and all material on hand and complete the same."

The plaintiff, Knight, testified for himself that after his bid had been accepted, the board of directors called his attention to the fact that the plans and specifications called for two bids for the cornice, one for a wood cornice and the other for a metal cornice. He further stated: I told them that I was not posted on the price of a metal cornice, and that I had made my bid for a wood cornice. Afterward it was agreed between us that the metal cornice should be substituted for the wood cornice, and I charged them $300 for the difference in price. The least price I was offered to put in the metal cornice was $417. It

cost me about $350 to substitute the metal cornice for the wood cornice, but I only charged the district $300 therefor. I placed the cornice in the building according to the plans and specifications, and the work was done strictly in accordance therewith. My bid was accepted on the night of June 6, 1912, and the plans and specifications were left with the architect for certain changes to be made therein. Without my knowledge or consent, the architect drew a red line through that part of the plans and specifications which called for a wood cornice, and I did not discover that fact until after the contract was signed, and after I had commenced work on the building. It was then agreed between us that this was a mistake, and that I should be paid an extra amount for substituting a metal cornice for the wooden one. Under our contract, the board of directors were to grade the ground level before I commenced work. Before they had finished grading, it was ascertained that it was necessary to do additional work on the concrete foundation, and the board agreed to pay me for this extra work. I constructed the schoolhouse and performed all the extra labor and furnished the materials therefor strictly according to the terms of the contract. The balance due me under the contract and for the extra work and materials furnished pursuant to changes in the contract agreed upon between us amounts to the sum I have sued for. Other evidence was adduced by the plaintiff tending to corroborate his own testimony.

Testimony was adduced by the defendant school district tending to show that the changes made in the plans and specifications were made by the architect on June 7, and that the plans and specifications at that time were returned by the architect to the contractor, and were not thereafterward in the possession of the architect; that the wooden cornice was erased from the plans and specifications before the contract was signed by the parties thereto, and that Knight knew of this fact and knew that his bid was accepted with the understanding that he was to put in a metal cornice instead of a wooden one; that

the concrete foundation was put in in a faulty manner, and that there were great cracks in it; that the plaintiff had overcharged for extra work, and that no extra charge was to be made for the changes in the foundation; that the cornice was not constructed in the manner provided for in the contract, and that the architect ordered it removed and another one was constructed by the school district which was in accordance with the contract and the plans and specifications; that the roof was constructed in a faulty manner and that the architect ordered these defects to be corrected, and that this was all done at the expense of $628.

Other testimony will be stated or referred to in the opinion. The jury returned a verdict for the plaintiff in the sum of $1,282.62, and from the judgment rendered the defendants have duly prosecuted an appeal to this court.

*J. I. Alley, James S. Steel, J. S. Lake* and *James D. Head,* for appellant.

*W. M. Pipkin* and *Pole McPhetrige,* for appellee.

HART, J., (after stating the facts.) The court, on its own motion, gave instructions Nos. 3 and 4 to the jury, over the objection of the defendant. The instructions are as follows:

"The parties having entered into the contract sued on voluntarily and having agreed upon the architect, VanDyke, as the arbiter of the matters specified therein, you are instructed that as to all such matters left to the determination of the architect, his decision is final and binding upon the parties hereto in the absence of fraud or such gross mistake as to imply bad faith on his part." (No. 3.)

"If you find from a preponderance of the testimony that the plaintiff completed the building of defendant substantially in compliance with his contract, then you will find for the plaintiff the difference between the contract price and the amount that has already been paid to plaintiff." (No. 4.)

In the case of *Boston Store* v. *Schleuter*, 88 Ark. 213, the court held: "A stipulation in a building contract that the contractor shall be bound by the architect's decision is binding upon both parties, in the absence of fraud or such gross mistake as necessarily implies bad faith on part of the architect."

Therefore, it is contended by counsel for the defendant that instructions Nos. 3 and 4 are in conflict with each other. We do not think so. Under the terms of the contract it was provided that the decision of the architect as to whether the schoolhouse was built according to the plans and specifications should be binding on the parties, and the burden was on the plaintiff to show by proper evidence that the decision of the architect in the matters complained of was fraudulently made. *Bush* v. *Jones*, 144 Fed. 942, 6 L. R. A. (N. S.) 774. To meet the burden thus placed upon him, it was competent for the plaintiff to show by proper evidence that he had done the work in all particulars as called for by the contract, as tending to show that the architect had arbitrarily and capriciously ordered the work to be taken out and new work substituted for it, and that such changes were not ordered made by the architect honestly and in good faith. It will be noted that instruction No. 4 told the jury that if it should find from a preponderance of the testimony that plaintiff had completed the building in compliance with his contract, then the verdict should be for the plaintiff. Now the contract provided that the decision of the architect, when made honestly and in good faith, should be binding on the parties. Thus it will be seen that instruction No. 4, when read in connection with instruction No. 3, was explanatory of it, and not contradictory to it.

It is next contended by counsel for defendants that the court erred in refusing to give instruction No. 28. The instruction is as follows:

"The burden of proof is on the plaintiff to show that the specifications were changed after the execution of the contract, so as to eliminate the wooden cornice, and unless he has done this by a preponderance of the evidence, you will find for the defendant on that issue."

We think the court erred in refusing to give this instruction. In the case of *Klein* v. *German National Bank,* 69 Ark. 140, the court held that the fact that a note sued on appears on its face to have been altered, raises no presumption against its validity, nor does it cast upon the plaintiff the burden of showing whether the alterations were made before or after its execution and quoted with approval the following:

"The view best supported by reason, and the one to which the authorities seem tending, is that the mere fact of an interlineation or erasure appearing in an instrument does not *per se* raise any presumption either for or against the validity of the writing; and the question when, by whom, and with what intent an alteration was made is one of fact, to be submitted to the jury upon the whole evidence."

The contract in question was not signed until the 15th day of June, 1912, and the plans and specifications were made a part of the contract. The bid of plaintiff was received and accepted on the night of June 6, 1912, and the undisputed testimony shows that certain changes which had been agreed upon by the parties were to be made in the plans and specifications before the contract should be reduced to writing and signed by the parties. The architect took the plans for the purpose of making these changes, and testified that he did so on the 7th day of June, 1912, and returned the plans and specifications to the contractor, and that the erasure of the wooden cornice was made before the plans and specifications were returned to the contractor and before the contract was signed by the parties thereto. On the other hand, the plaintiff testified that he did not receive the plans and specifications until after the contract had been signed and after he had commenced work on the building. He states that it was agreed between them that his bid should be for a wooden cornice and that afterward the plans were changed so as to provide for a metal cornice; that at the time he signed the contract, he did not know that the wooden cornice had been erased from the plans and specifications.

Under the authority quoted above, we hold that the burden was on the plaintiff to make out all the facts upon which his case rests, and therefore the burden was upon him to show that the erasure was made after the contract was executed between the parties.

Again, it is contended by counsel for defendant that the court erred in refusing to give instruction No. 30. It is as follows: ''You are instructed that if you find that the contract as signed called for metal cornice, and you so find from the evidence, you will find in favor of defendant for its necessary and reasonable expense in building the new cornice, provided that you find that the cornice was ordered taken out by the architect for not coming up to contract and specifications.''

We also think counsel are correct in this contention. As we have already seen, the defendants adduced evidence tending to show that the contract between the parties called for a metal cornice, and that, under the terms of the contract, the decision of the architect as to whether the building was constructed according to the contract and plans and specifications was to be binding on the parties. Therefore, if the jury found that the contract called for a metal cornice, and that the same was ordered taken out by the architect because it was not according to the plans and specifications, the defendant would be entitled to recover the reasonable cost of putting in a new cornice, and to have that amount deducted from the contract price. In other instructions the court told the jury that if they found from the evidence that the metal cornice, as put in by the plaintiff, was not according to plans and specifications, and had to be removed on that account, the plaintiff would not be entitled to recover the extra compensation claimed by him for putting in the metal cornice. The court also submitted to the jury the question of whether or not the contract and plans and specifications called for a wooden cornice or a metal cornice, and whether or not the defendant agreed to pay the plaintiff extra compensation for putting in the metal cornice; but in none of the instructions given to the jury was

the question of whether or not the defendant was entitled to recover for, or to have deducted from the contract price, the cost of putting in a new metal cornice, provided the jury found that the architect rightfully ordered the one that was constructed by the plaintiff to be removed because it was not constructed according to the plans and specifications.

The court also instructed the jury to find for the plaintiff on the item of addition to the rostrum. The undisputed evidence shows that after the work of constructing the rostrum was begun, it was ascertained that it was too small, and the architect directed the plaintiff to make it larger, saying that he personally would pay him the difference. The additional cost of this item was only ten dollars, and we would not reverse the judgment for that error alone, but would eliminate it by reducing the amount recovered by the plaintiff this amount. The undisputed evidence shows that the architect himself agreed to pay the plaintiff for the additional work on the rostrum, and that the work was done pursuant to this agreement with the architect. Therefore, the defendants were not liable for it.

For the error in refusing to give instructions Nos. 28 and 30, asked by the defendant, the judgment will be reversed and the cause remanded for a new trial.