BOARD OF IMPROVEMENT WATER & LIGHT IMPROVEMENT
DISTRICTS OF SULPHUR SPRINGS *v.* GALBRAITH.

## Opinion delivered March 20, 1916.

IMPROVEMENT DISTRICTS—BOND REQUIRED OF CONTRACTOR—ACTS OF
BOARD—CHANGES—REMISSION OF PENALTY.—Kirby's Digest, §
5719, provides that all contractors "shall be required to give
bond for the faithful performance of such contracts as may be
awarded them, with good and sufficient sureties, in double the
amount of the contract work, and the board shall not remit or
excuse the penalty or forfeiture of said bond or the breaches
thereof." *Held,* under the statute that the board of commission-
ers of an improvement district could not, by its conduct, excuse
any failure on the part of the contractor to perform his work
according to the contract, after the work had been done. The
statute would not prevent the board, during the progress of the
work, from making changes therein by agreement with the con-
tractor, and if the board, during the time the work was
progressing, acquiesced in or consented to certain changes, the
district would be precluded by such acts on the part of the
board from recovering against the contractor for damages based
upon these changes as alleged breaches of the contract.

Appeal from Benton Chancery Court; *T. H. Humph-
reys,* Chancellor; reversed, and judgment here for ap-
pellants.

*Rice & Dickson* and *McGill & Lindsey,* for appellant.

1. The engineer was guilty of no fraud or mis-
conduct; nor is any shown on the part of the board. By
the stipulations in the contract, the board was to have
the final decision in all matters of dispute. This provision
is valid, binding and enforceable. 112 Ark. 83; 88 *Id.* 213;
83 *Id.* 140; Loyd on Buildings, § § 19 and 20 A; 79
Ark. 506.

2. The deductions or decreases and also the extras
or increases are fair and reasonable, and having been
determined by the engineer and the board their decision is

3. The board is entitled to the credit of $3,838.24 for
the decreases under the proof, regardless of the rights
of the engineer and board to fix and decide upon the

amount. Even if there was an oral agreement that Galbraith might charge upon a unit basis for increases, it would leave unaffected the decreases.

4. But there was no such agreement. The unit basis on increases is not proven and the burden was on Galbraith. No change was made in the written contract. No fraud or unfairness is shown.

5. Upon the record and findings judgment should have been entered on the cross-bill for the full amount claimed.

6. There was no waiver of contractual rights by the board. 88 Ark. 213; 79 *Id.* 506.

*Warner & Warner,* for appellee.

1. No final authority was exercised by the board in this cause, nor under the contract did it have any right to exercise final authority as an arbiter. The authority of the board is limited to questions which might arise and which are not provided for in the contract. There were no questions involved in this cause which were not involved and provided for in the contract, and the plans and specifications, so no necessity arose for the board to act as final arbiter.

2. Moore's decision was not a final estimate, but only the result of his calculations up to the time of his estimate. The engineer was given no power to act as final arbiter. The principle of estoppel is justly applicable here. 105 Wis. 127; 80 Tex. 38; 1 Beach, Mod. Con. 141; Waite, Eng. Jur., § § 467-8; 65 N. W. 86; 42 N. Y. Supp. 688; 12 App. Div. 621; 71 Hun. 69. Where the architect is present and has knowledge of the character of materials used and does not object, it is an approval which can not be revised to the injury of a contractor. 1 Beach, Mod. Cont. 141; 126 Fed. 343; 25 Atl. 505; 74 Fed. 160; Waite on Eng. Jur., § § 370, 340; 10 So. 422.

3. The engineer's authority was specifically defined in the contract and specifications. No defects were ever pointed out, and no requirement to remedy or replace de-

fects was made by the engineer, except one which was taken care of.

4. Where there is a failure to construct the work so that the same conforms to the provisions of the contract, it does not follow that the contractor is without remedy. 61 S. E. 831; 151 Mass. 553; 43 Atl. 621; 71 App. Div. (N. Y.) 40; 10 Atl. 264; 53 So. 196; 121 S. W. 477; 51 *Id.* 564; 139 *Id.* 792.

5. The damages claimed under the cross-complaint were wholly speculative and remote. 21 Ark. 431; 29 *Id.* 448; 53 *Id.* 434; 8 Rul. Case Law, § 12, p. 438.

6. The cases cited by appellant do not apply; the facts were wholly different.

### STATEMENT OF FACTS.

On the 22d of March, 1913, appellee entered into written contracts with the improvement districts, which districts were separate, but had the same commissioners, for the construction of electric light and waterworks improvements. The commissioners agreed to pay for both improvements an aggregate sum of $19,161. The work was to be done according to certain plans and specifications, which were a part of the contract. The contracts contained, among others, the following provisions:

"All work done and all material furnished shall be inspected by the engineer, and if found not to conform to the conditions of the contract and specifications, it will be rejected. It must be removed from the work at once and suitable material furnished. The engineer shall have the right to refuse or reject at any time during the progress or at the completion of said work, any work done or material furnished which, in his opinion, may not be in strict compliance with the terms of this contract. The contractor shall, upon his being so directed by the engineer, remove, rebuild or make good at his own cost any work which the latter shall decide to be defective, and any omission to condemn any work at the time of its construction, or if it has been accepted by the inspector in charge, shall not be construed as an acceptance of any defective work,

but the first party shall correct any imperfections whenever discovered before the final acceptance of the work.''

"The city may at any time before the final completion of the contract order any additional work to be done or any work omitted.

"The board shall have the final decision in all matters of dispute involving the character, quality and the amount of work and the compensation to be paid therefor in cases not directly provided for in this contract or the plans and specifications, or any other question arising under this contract. That changes in the line, plans, position, dimension, material or work may be made by the board. If such alterations diminish the quality of work to be done, the contractor shall be paid for the actual quantities used and work done, and if they increased the amount of work or material, the increases shall be paid for according to the quantity of the work or material actually used or done at the price established for such work under the contract except wherein at the option of the board the contractor is clearly entitled to extra compensation; that no charge shall be made for extras except where it is agreed to in writing. If the work is abandoned or not completed the board may take charge.''

Appellee entered upon the performance of the contracts, and during the progress of the work payments were made to him aggregating the sum of $16,385.76. These payments were made under a provision of the contract to the effect that the engineer, about the last of each month, should make an estimate of the work and material which had been done and furnished, and that the contractor should be paid 80 per cent. of said estimate, and that after the work had been completed the engineer should make a final estimate and the contractor should then be paid 95 per cent., the remaining 5 per cent. to be retained three months, to be applied by the board or city in making repairs, filling trenches or repairing faulty material or equipment.

During the progress of the work several changes were made with reference to locality. Other changes con-

sisted in omitting certain portions of the work contained in the specifications and in making additions, not specifically described therein, under the written orders of the board. After the work had been completed appellee submitted to the engineer an itemized statement of his charges for same, including the extra work. His statement showed a balance due him, after all payments, amounting to about $3,000. The boards refused to settle this claim and he instituted this suit, setting up the contract and alleging compliance with its provisions, and praying for judgment, and that a lien be declared on the plants. He also set up that the commissioners had issued bonds and raised money for constructing the plants contemplated by the improvement districts which they had diverted to other purposes, and that they therefore became liable to appellee personally for the sum claimed to be due him, and he asked judgment against the commissioners individually.

Appellants answered, denying that the appellee had completed the improvements according to the plans and specifications provided in the contract; alleged that he had abandoned the same, and that the board had notified the bondsmen and that the bondsmen had refused to complete the same; that the commissioners thereupon, under the contract, had the right to the possession of the grounds, which they had taken, and also to complete the work, which they were then undertaking to do. They admitted that certain changes were made in the work and material, but alleged that these did not increase the original contract price, but, on the contrary, that they made a net decrease of about $2,000; that appellant had paid the appellee the sum of $16,792, which would leave a balance of only $366 due, if appellee had complied with the provisions of the contract. They denied other allegations of the complaint, and set up, by way of cross-complaint, that the water plant system was leaking badly because the joints were not properly calked; that to repair the system it would require that the trenches be reopened and the joints calked and the trenches refilled, all at a cost which

they itemized and which, in the aggregate, amounted to $2,798.13, for which they prayed judgment. Appellee denied the allegations of the cross-complaint.

The chancellor found that the commissioners had paid to the appellee the sum of $16,385.76 in cash, and that in addition thereto appellants were entitled to a credit for the sum of $2,340.23, the same being the value of the work and material omitted by agreement, making the total amount of $18,706.19, to which the commissioners (appellants) were entitled as a credit on the contract price. He further found that appellants were indebted to the appellee in the sum of $454.81, as a balance due under the contract, and the sum of $1,255.71 for the extra work done and materials furnished in the construction of the said works, making a total sum of $1,710.52.

The chancellor further found that the appellee had completed his contract except as to the ditching and calking and as to the steam pipe in the power house and certain pipes which were exposed, which the appellants had repaired at a total cost of $159, which should be allowed on their cross-complaint and deducted from the sum of $1,710.52, the amount found due appellee, leaving a balance in his favor of $1,551.52, which with interest from October 6, 1913, amounted to $1,716.85, for which judgment was rendered against the appellant districts.

The chancellor further found that the appellants were estopped from recovering any amount on their cross-complaint growing out of the alleged failure upon the part of the appellee in digging the ditches into which the water pipes were laid and a failure to calk the joints of these pipes; that the amount alleged to be due on account of such failure was waived by the appellants.

The complaints against the commissioners as individuals and the appellants' cross-complaint, except as to the items mentioned, were dismissed, and both appellants and appellee prosecute this appeal. Such other facts as may be necessary will be stated in the opinion.

WOOD, J., (after stating the facts). I. Among other provisions in the contract is the following:

"The board shall have the final decision in all matters of dispute involving the character, quality and the amount of work and the compensation to be paid therefor in cases not directly provided for in this contract or the plans and specifications, or any other question arising under this contract."

Appellants contend that under this provision the decision of the board and the engineer as to the amount that should be deducted from the original contract price was final.

The improvement districts in entering upon the contracts with the appellee could do so only through their board of commissioners. No authority is found in the above provision of the contract for constituting the board a final arbiter to settle all matters of dispute that might arise between the improvement districts and the appellee. There was no attempt upon the part of either party to the contract to have the matters in dispute submitted to the board as an arbiter. Such a provision in the contract, if made, was uninforceable, as evidenced by this lawsuit. Hence *Hatfield Special School District* v. *Knight,* 112 Ark. 83, and *Boston Store* v. *Schleuter,* 88 Ark. 213, cited by appellee to the effect that where a dispute arose between the parties to the contract as to the performance of the same in certain particulars that the decision of the architect should be binding, has no application here, for there is no such provision in this contract.

The above provision, however, must be considered as reflecting the intention of the parties in making the contract, and in determining the questions now at issue between them we must weigh the evidence in the light of the above provision. But such provision can not be invoked by the appellants as a settlement of this lawsuit in favor of their contention.

There are provisions in the contract requiring all work to be inspected by the engineer, Albert C. Moore, and giving him the right to reject all work that was not in

compliance with the contract, and requiring the contractor to furnish all material and labor, and to execute the work in accordance with the plans and specifications prepared by the consulting engineer, and making these plans and specifications a part of the contract. When all of these provisions are considered together it is manifest that the board, in rejecting the itemized account presented by the appellee did so because it conceived that the items charged for were not in accord with the provisions of the contract as shown by the final estimate made by Moore, the consulting engineer. The testimony shows that the appellee and Moore went over this estimate, and that there was a considerable difference between them.

The court found that the appellants were entitled to a credit for the sum of $2,340.23, for the value of the work and material which the board omitted, under the terms of the contract; whereas the appellants contend that the court should have allowed them on this account the sum of $3,838.24. The contention of appellants is in accord with the clear preponderance of the evidence.

The testimony of Moore, the consulting engineer, shows that the total value of the deductions that should be made for work and materials that were omitted, under the terms of the contract, amounted to $3,838.24, and that the total value of the work, labor and materials furnished for the increased work was $1,836.32, which made a net reduction of $2,001.92, to which appellants were entitled. The testimony shows that appellee had been paid $16,-792.15. Appellants were entitled to have the amount of this net reduction and these admitted payments taken from the contract price of $19,161, which would leave a balance due appellee of $366.93, instead of the sum of $1,710.52, as found by the chancellor.

There was also, according to the testimony, "some old material left over which the board agreed to take, worth about $200, for which appellee should be paid. The chancellor found that the appellants had expended the sum of $159 in repairing certain defects wherein appellee had failed to comply with his contract, and for which ap-

pellants should have credit.    See *Hatfield* v. *Knight, supra.*    So far as this record discloses these items are correct, and this would leave the sum of $407.93 due appellee on the contract, which sum should bear interest at the rate of 6 per cent. per annum from October 6, 1913, the date upon which appellants refused to make the settlement with appellee for the amount claimed to be due him under his contract.

The testimony of Moore, the consulting engineer, shows that he allowed appellee the contract price for the items.    The testimony of appellee himself shows that he arrived at the amount claimed to be due on the unit basis. On this point he was asked, "How did this difference arise between the total of the aggregate sum here and the lump aggregate sum of the contract?" and answered, "It was by the difference in the allowances that was made, as on the basis of $100 for that smoke stack.    This difference comes in a unit basis.    The difference would be what it would be on a unit basis and what it would be under the original contract."

Appellee's testimony tended to show that there was an oral understanding at the time the changes were made which warranted him in charging for the increased work on the unit basis.    The consulting engineer and each member of the board testified that there was no change made in the written contract.    Besides the contract itself provides that any important changes should be agreed upon in writing by the parties prior to performing the work or furnishing the material, and that no extra charge should be made unless such provision was complied with. It also provides that such changes should be on the basis of the contract.

The court therefore erred in adopting the basis of account established by the testimony of the contractor instead of the basis as established by the testimony of the engineer, and the written contract.

II.    The court found that the appellee had not complied with the contract in the manner in which he dug the ditches and laid and calked the pipes, but that the appel-

lants were estopped by their acts and conduct from recovering any sum on the cross-complaint on account of such breach of the contract.

The finding of the court that the contractor had not complied with his contract in the matter of digging ditches and calking the pipes is sustained by a preponderance of the evidence. The appellants set up in their cross-complaint that to do this work so as to make it conform to the requirements of the contract would cost the sum of $2,035.05. The chancellor refused to allow the appellants to recover against the appellee for this sum, on the ground that they were estopped by their conduct.

The statute, Kirby's Digest, section 5719, provides that all contractors "shall be required to give bond for the faithful performance of such contracts as may be awarded them, with good and sufficient securities, in double the amount of the contract work, and the board shall not remit or excuse the penalty or forfeiture of said bond or the breaches thereof."

Under this provision the board of commissioners could not, by its conduct, excuse any failure on the part of the contractor to perform his work according to the contract, after the work had been done. This provision, however, would not prevent the board, during the progress of the work, from making changes therein by agreement with the contractor, and if the board, during the time the work was progressing, acquiesced in or consented to certain changes, the district would be precluded by such acts on the part of the board from recovering against the contractor for damages based upon these changes as alleged breaches of the contract. The contract gave the engineer the right, as we have seen, at any time during the progress of the work or after its completion, to refuse, or reject any of the work done or material funished, that were not in strict compliance with the contract, and the contract provided that such defective work and material "must be removed from the work at once and suitable material furnished." The contract further provided that "the first party shall correct any imperfec-

tions whenever discovered before the final acceptance of the work.''

The appellee contends that the board, through its engineer having immediate supervision of the work, and individual members of the board who were present at different times while the work was under way, observed the manner in which the appellee was digging the ditches and calking the joints and made no objections thereto. But, on the contrary, that they acquiesced in what was being done by accepting the work and paying the 80 per cent. provided by the contract, and even more.

The appellee himself testified that the work was completed before he left the job, and that Roth, who had immediate charge of the work for the board, did not require him to do anything further; that nothing was said about the work not being completed; that Moore, the supervising engineer, came down and inspected the plant and made an examination and test of the pipe line and found no leaks; that he fixed up all that Moore required fixed; that Williams, one of the members of the board, made no objection as to the construction of the plant in any way.

Oliver Galbraith was superintendent of the work for the appellee, and he testified: ''Mr. Moore came down and complimented me on the progress I had made with the work. He complimented me on the depth of the pipe leading down to Williams' addition. I had it down about four feet. This was soon after we commenced.''

Sykes, the foreman, testified that he did not know ''of Mr. Williams, or Roth, or Slatton objecting to the work or to the depth.'' Williams was there often, but he did not know of his making any objections.

Slatten, one of the members of the board, testified that he ''was on the job and made objections to the depth they laid them (the pipes), and was given to understand that they would be fixed up in proper depth and made right;'' that he went to both Roth and Galbraith and complained about the manner in which the pipes were being laid and the joints calked, and that they gave him to understand that they would have it made right; that their

wages would be held out, and that they would make it right. He stated that the appellee was not on the job at the time these ditches were being dug and the pipes laid, and that he went to where Roth and appellee were and spoke to them about it; that the appellee was not at Sulphur Springs very much. He made objections a number of times to the calking and to the depth of the trenches.

Williams, another member of the board, testified that "at times there seemed to be work done that I did not think was right, and I called the engineer's attention to it and called Galbraith's attention to it, and he said, 'You have our bond; it is good for it;'" that he made objections to young Mr. Galbraith, who was in charge for his father, as to the pipes being laid too shallow in certain places that he saw; that he made objections at the time they were digging the ditches as to the depth. He reported it to young Mr. Galbraith, and also to the engineer, Roth; that Galbraith said they would fix it up.

The testimony of Roth was to the effect that he made objections to the superintendent, Galbraith, and also to the foreman, Sykes, that the work was not being done according to the plans and specifications; that the trenches were not being dug or the pipes calked as the specifications required. They would say that the work was all right the way they were doing it, and that if it was not all right that we had their bond which would require them to make it all right.

There was testimony on behalf of the appellants also tending to show that appellee was not present much of the time the work was in progress.

Without further setting out and discussing the evidence in detail, it suffices to say that the preponderance of the evidence shows that neither the board nor the engineer having the work in charge consented at the time the trenches were being dug and the pipes laid and calked to the manner in which this was being done; but, on the contrary, that they protested against it and notified those having the work in hand at the time that the contract was being violated. The testimony of the engineer, on be-

half of the appellants, shows that the cost of repairing and completing this work in the manner required by the contract would amount to the aggregate sum of $2,035.06, specifying the items.

The court erred, therefore, in finding that the district was estopped and precluded by the conduct of the board from claiming damages on account of the failure to dig the ditches and calk the joints as the contract required, and erred in dismissing the cross-complaint as to damages for failure to comply with the contract in these particulars.

. The decree will therefore be reversed and judgment will be entered here in favor of the appellants for the sum of $2,035.06, less the sum of $407.93, with interest thereon at 6 per cent. per annum from the 6th day of October, 1913.