Argued March 14, reversed March 26, 1918.

## ELLIOTT CONTRACTING CO. *v.* CITY OF PORTLAND.*

### (171 Pac. 760.)

**Evidence—Contract—Construction—Consideration.**

1. Plaintiff, who agreed to furnish materials and construct pavement, and also to "pay to the city for so much base course stone now in stock piles on the drive as may be incorporated into the pavement" at a stipulated price, could not import into the agreement any additional stipulation of the city to furnish all the rock required on the pretense of inquiring into the consideration; such provision being contractual and not monetary, and the contract being necessarily construed as containing all the terms agreed upon, in view of Section 713, L. O. L., as to parol evidence varying writings.

**Municipal Corporations—Contract—Construction.**

2. Such contract bound the city only to furnish such rock as was on the drive, and not to furnish a certain amount.

**Contracts—Legality—Public Policy.**

3. It is not contrary to public policy for a city contractor to agree that the determination of the completion of the work and the amount of the materials used shall be left to the city engineer.

**Contracts—Construction.**

4. All of a contract must be taken together as the standard the parties have devised for the control of their relations.

---

*On the general rule that parol evidence is not admissible to vary, add to or alter a written contract, see note in 17 L. R. A. 270.

On mutuality of accepted proposition to furnish such material as one needs in his business, see notes in 11 L. R. A. (N. S.) 713; 43 L. R. A. (N. S.) 730.                    REPORTER.

Municipal Corporations—Contracts—Mutuality.

5. Where contractor agreed to furnish materials and construct pavement, and to pay for stone on the drive which belonged to the city, for which work the city was to pay a certain amount, the contract was not unilateral, but was mutually obligatory.

Municipal Corporations—Actions—Pleadings—Sufficiency.

6. Where a contractor agreed to furnish materials and complete paving, and further agreed that the city engineer should by certificate determine the amount of materials used, and the engineer made such determination, the contractor could not recover a larger sum in the absence of allegations and proof of the engineer's fraudulent conduct or willful disregard of fair computation.

[As to effect of architects' certificates and engineers' estimates when provided for in contracts, see note in 56 Am. St. Rep. 312.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   By an agreement attached to its complaint and made part thereof the plaintiff, as contractor, covenanted with the City of Portland

"that the contractor, for the consideration hereinafter named, does hereby agree to furnish all material and perform all of the labor necessary or required for the construction and full completion of the macadam pavement and all necessary trenches for storm water drains on that portion of the Hillside Parkway from Hamilton Avenue entrance to Sheridan Street, in full compliance with the plans and specifications therefor, which plans and specifications are identified by the signatures of the parties, and are hereby made a part of this agreement, except where said specifications are modified by this contract in which case this contract shall prevail, and to complete said improvement and all work thereon in a skillful and workmanlike manner, and to the satisfaction of the council of said city, on or before the first day of June, 1914, at and for the unit prices following, to wit:

"Excavation other than in trenches:
    Solid Rock ............. $2.50 per cubic yard
    Common .............. .40  "    "    "
"Trench Excavation:
    Solid Rock ............. 2.50  "    "    "
    Common .............. .40  "    "    "
"Macadam Pavement:
    Materials, labor entire... .50  " square "

" * * It is further understood and agreed by the contractor that it will pay to the city out of any money that may become due for the computed work embraced herein, for so much base course stone now in stock piles on the drive as may be incorporated into the pavement at the rate of $1 per cubic yard."

The plans and specifications referred to in the excerpt above set out are not in the record before us. Whether they authorized the city engineer to change the grade or excavation or any other detail is not made to appear. The contract also contained this provision:

"The city engineer of said city shall decide all questions which may arise between the parties hereto relative to the true intent and meaning of any of the provisions or stipulations contained in this contract, or the amount, quantities, character or classification of the work performed by the contractor under this contract, and his decision thereon shall be final and binding upon the contractor, subject only to modification or reversal by the council of said city."

The plaintiff alleges that it purchased from the city 2,906 cubic yards of base course rock at an agreed price of $1 per yard, but that the city wrongfully overcharged the plaintiff with 3,814 cubic yards, the amount of such overcharge being $908. It is further stated in the complaint that

"defendant city as part of the consideration of said contract, agreed to furnish plaintiff rock necessary for the base course of the said roadway at the agreed price of $1 per cubic yard for the construction thereof, and estimated that it had on hand approximately 5,000 cubic yards of such material; that the defendant city furnished to this plaintiff only 2,906 cubic yards of such base rock, and no more; the said city failed, neglected and refused to furnish the balance of said base rock to plaintiff."

It is further alleged in substance that the city engineer modified the plans and specifications so that plaintiff was compelled to purchase more base course rock than would otherwise have been required amounting to an excess of $1,004.25. The plaintiff also claims for an overplus of second course rock, screenings, sand and detritus, $3,330, and extra excavation from ditches $1,500, all of which with the item of $908 amounts to $6,742.25, for which it demands judgment. The pleading concludes with this allegation:

"That after the completion and performance of the said contract on behalf of plaintiff, the defendant, through the officer designated in said contract, inspected and accepted the work of this plaintiff and pretended to estimate and calculate the amount which plaintiff was entitled to recover therefor, but in the estimate and calculation the said officer of the defendant refused and neglected to allow plaintiff any of the sums herein specified on any of the items as herein set forth, and that the estimate and calculation of the said officer upon which sum was paid to plaintiff, as herein alleged, was erroneous, incorrect and untrue in the particulars herein specified and in that the officer representing the defendant refused to rectify or correct the same. That thereafter, the plaintiff attempted to have the said matter rectified by the city council of the city of Portland, but the said city council failed, neglected and refused and still fails, neglects and refuses to allow this plaintiff for any of the items herein specified or to pay the plaintiff therefor."

The defendant's general demurrer to the complaint was overruled. It is unnecessary to recite the text or substance of the answer or reply because the sole contention of the city on this appeal is that the complaint does not state facts sufficient to constitute a cause of action. The case was referred to a referee who reported findings of fact and conclusions of law

to the effect that the plaintiff was entitled to recover $1,220.10 with costs and disbursements. This conclusion was adopted by the court and judgment entered accordingly, from which defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, *Mr. Lyman E. Latourette,* Deputy City Attorney, and *Mr. Stanley Myers,* Deputy City Attorney, with an oral argument by *Mr. Latourette.*

For respondent there was a brief over the names of *Mr. John J. Fitzgerald* and *Messrs. Logan & Smith,* with an oral argument by *Mr. Fitzgerald.*

BURNETT, J.—1. The argument against the complaint is that the pleader does not state that the engineer was actuated by fraud or had excluded items due the plaintiff to such an extent as to indicate bad faith. In the first place we note that not all of the contract is before us in that the terms of the specifications alluded to are not stated. Aside from that the exhibit attached to the complaint embodies the stipulation of the parties. It is said in that pleading that as part of the consideration of the contract the defendant agreed to furnish certain rock at a certain rate. This allegation cannot affect the actual stipulation which speaks for itself and is to be considered as containing all the terms of the contract: Section 713, L. O. L. The plaintiff cannot import into the agreement any additional stipulation on the pretense that it is merely inquiring into the consideration. The provision which it would thus add is contractual in its nature and not merely monetary. The rule is thus stated in *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135):

"The consideration specified in the written contract consists of certain acts to be performed, and the authorities are practically unanimous in holding that, where the statement in the written instrument as to the consideration is of a contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to perform certain acts, it cannot be changed or modified by parol or extrinsic evidence": See, also, *Muir* v. *Morris,* 80 Or. 378 (154 Pac. 117, 157 Pac. 785).

2, 3. Referring to the agreement itself it is plain that the city did not agree to furnish any particular amount of base course stone but only so much as might be in the stock piles on the drive and should be incorporated into the pavement. At the very beginning of the instrument the plaintiff contracted to furnish all material and perform all the labor necessary and the agreement of the city to put in whatever was in the pile adjacent to the way was a mere exception to the general duty imposed upon the contractor. As stated, the job was to be paid for on the unit principle which would require a measuring of the work after its completion. It consisted of excavation and pavement for which the contractor was to be compensated according to certain fixed rates. This involved a determination of the amount, quantity, character and classification of the work performed by the contractor in its finished state. While it might be improvident for the plaintiff to agree that the measurement of its work should be left to the defendant's officer we are not aware of any law preventing it from making such a stipulation. It is not contrary to public policy and if it chose thus to put itself at the mercy so to speak of the other contracting party's servant it had a right to do so. It is analogous to instances where one person agrees to construct a certain piece of work to the satisfaction of

the owner. It has been decided many times that in such cases the owner must be satisfied except that he cannot withhold his satisfaction arbitrarily or fraudulently. The principle is thus stated in 9 Cyc. 620:

"And as there is assuredly no law which prevents a person from making contracts of this kind, if he chooses, the courts should not hesitate to enforce them. The agreement is in short not to make or do a thing which the promisor *ought* to be satisfied with, but to make or do a thing which he *is* satisfied with. Such a contract may be one sided in being dependent upon the caprice of one of the parties; it may be an unwise contract to make; but if it is entered into voluntarily, the promisee is bound, and can have no right to ask a court to alter its terms in his favor."

4. Some Illinois cases, not of the court of last resort, were cited by the plaintiff in support of its contention that the provision relating to the duty of the engineer in measuring the work lacks mutuality and hence is void. A clause of the opinion of Mr. Chief Justice AILSHIE in *Nelson Bennett Co.* v. *Twin Falls Land & Water Co.,* 14 Idaho, 5 (93 Pac. 789), *arguendo,* is also noted, but in our judgment they are not expressive of the correct rule. The true doctrine is that all the contract must be taken together as the standard the parties have devised for the control of their relations to each other. There being nothing unlawful about it they have a right to stipulate that either one of them or a third person shall bind the other by his decision.

5, 6. The contractor voluntarily undertook to work with the condition in question included in the agreement. It is not by the mark to say that the contract is unilateral. Almost every agreement contains terms which are to be performed only by one party and not by the other. In a sense the covenants of one are not

binding upon the other; but the contract is none the less mutually obligatory when considered, as it should be, in all its parts.   The city agreed that its officer should decide all questions.   It thus constituted that official its agent for that purpose and hence would be bound by his action under the principle of *qui facit per alium, facit per se.*   On the other hand, the plaintiff undertook the performance of the work on that condition and cannot now be heard to complain in the absence of allegations tending· to impeach the award on the ground of fraud or such reckless disregard of fair dealing as would amount to fraud.   The complaint really proceeds on the theory that the condition giving authority to the city engineer is a valid one and complains of its violation; but it does not pretend to say that the officer did not rightly compute the number of cubic yards of excavation or the number of square yards of pavement in compliance with the stipulation for the payment of unit prices.   Neither does it impute to the  officer any fraudulent conduct or willful disregard of fair computation.   In the absence of such allegations, the parties must be bound by the decision of the tribunal which they themselves have erected.   Besides all this, the plain object of the complaint is by means of an action at law to set aside the award of the engineer acting as arbiter.   That this cannot be so done was decided in *Fire Assn.* v. *Allesina,* 45 Or. 154 (77 Pac. 123), which ruling was approved in *Cohn* v. *Wemme,* 47 Or. 146 (81 Pac. 981, 8 Ann. Cas. 508), holding that the remedy lies in equity.

That the contract is not unilateral or void is decided in *Boston Store* v. *Schleuter,* 88 Ark. 213 (114 S. W. 242), and *Young* v. *Stein,* 152 Mich. 310 (116 N. W. 195, 125 Am. St. Rep. 412, 17 L. R. A. (N. S.) 231). That the decision of the engineer is binding in the ab-

sence of fraud is determined in *Dennis* v. *Willamina*, 80 Or. 486 (157 Pac. 799). The same principle is laid down in *Gerdetz* v. *Central Oregon Irr. Co.*, 83 Or. 576 (163 Pac. 980). See also: *Lanier* v. *Little Rock Cooperage Co.*, 88 Ark. 557 (115 S. W. 401), and *Hatfield Special School District* v. *Knight*, 112 Ark. 83 (164 S. W. 1137). It being competent for the parties to make a contract of the kind stated leaving to the engineer the duty of measuring the amount of work done and there being no allegation in the complaint sufficient to impeach the award thus made, that pleading does not state facts sufficient to constitute a cause of action. The general demurrer should have been sustained, for which reason the judgment of the Circuit Court is reversed.                    REVERSED.

McBRIDE, C. J., BENSON and HARRIS, JJ., concur.