Argued at Pendleton October 26, 1920, reversed January 11, 1921.

# SLAYTON *v.* TWOHY BROS. CO.

### (194 Pac. 682.)

**Appeal and Error—Verdict Held to have Been Based on Insufficient Cause of Action.**

1.   Where numerous cases were consolidated for trial, all of them involving a cause of action for interference with one ditch and some of them involving also a second cause of action for interference with another ditch, and the jury reported that it found for the plaintiffs as to interference with the first ditch, but for defendant as to interference with the second ditch, but, after being instructed by the judge to return only one verdict either for plaintiff or defendant in each case, they returned a verdict for plaintiff in each case, it was manifest they found for defendants on the second cause of action, so that on deciding that first cause of action was insufficient, second cause will not be considered, it being analogous to moot case, but judgment will be reversed.

**Waters and Watercourses—Irrigation District Contract Held not to Prevent Destruction of Existing Ditch.**

2.   A provision in an irrigation district contract, requiring the contractor to protect from injury existing property except in so far as the work required its modification or removal, does not require the contractor to protect the rights of the former owners of a ditch to convey water for irrigation of their lands through the ditch, where they conveyed the ditch to the district for the purpose of enabling the district to construct its canal along the line of the ditch.

From Crook: JAMES U. CAMPBELL, Judge.

In Banc.

Plaintiff brings action against Twohy Bros. Company, a corporation, for damages. Upon the trial a verdict and judgment thereon were rendered in favor of plaintiff, from which judgment defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Malarkey, Seabrook & Dibble, Mr. James S. Wilson* and *Mr. G. L. Bernier,* with an oral argument by *Mr. E. B. Seabrook.*

For respondent there was a brief with oral arguments by *Mr. W. H. Wilson* and *Mr. N. G. Wallace.*

BEAN, J.—The complaint contains two causes of action. In the first cause of action the facts are in effect identical with those in the case of *Marks* v. *Twohy Bros. Co., ante,* p. 514 (194 Pac. 675), in which an opinion was rendered on this date, and also identical with those in the case of *O'Neil* v. *Twohy Bros. Co., ante,* p. 481 (190 Pac. 306), except as to the amount of damages claimed. The opinions in the two cases named govern the case at bar, as to the first cause of action. The judgment must therefore be reversed.

At the time of the argument of the five cases, which were mentioned in the opinion in *Marks* v. *Twohy Bros. Co.,* it was urged by counsel for plaintiff that defendant was culpably negligent, and trespassed upon the rights of plaintiff by using water from the Table Land Ditch to carry on hydraulic work of washing earth and material into the dam being constructed across Ochoco Creek. Defendant asserts that any water so used was under the direction of the Ochoco Irrigation District, made through its superintendent of the work and under his direction and with the consent and acquiescence of the several plaintiffs. As we understand the plaintiff's complaint and the record in the several cases, this was not a material item, nor taken into consideration by the jury in the trial of the cases.

The real complaint of plaintiffs seems to be that the company did not complete the irrigation system in time for irrigation during the season of 1918. It is not claimed, as we understand, that the construction was not done within the time provided for in the

written contract between defendant and the district. It is claimed that there was a prior or contemporaneous oral agreement that a certain portion of the work should be done so that plaintiffs could pass the water for irrigation by April 1, 1918, a month earlier than the date originally fixed by the contract.

In order to show the theory upon which the cases were tried, we refer at length to the instructions given to the jury by the learned trial judge, to which there was no objection on the part of plaintiffs. We do this in order to make it clear that practically the whole of the causes of action pertaining to the Table Land Ditch depend upon the question of the right to the use of that ditch, which is discussed in the opinion in *O'Neil* v. *Twohy Bros. Co.*, and that in *Marks* v. *Twohy Bros. Co.* In the six cases which were tried together the trial court instructed the jury as to the issues of law in the case of *Marks* v. *Twohy Bros. Co.*, and charged the jury that the instructions just given them in that case were all applicable to the case of *Powell* v. *Twohy Bros. Co., post,* p. 546 (194 Pac. 685), except as to the amount of damages claimed. The trial court then explained the issues, and instructed the jury in the case of *Cram & Cram* v. *Twohy Bros. Co.*, which pertains to the Combs-Slayton Ditch, charging *inter alia:*

"So that the plaintiffs who have land under what is known as the Combs-Slayton Ditch can only recover if the work done by the defendant, Twohy Bros. Company, a corporation, was done in a careless and negligent manner, as alleged in the complaint, and not otherwise. That is, if you find from a preponderance of the evidence that when the dam across said Ochoco Creek was closed, there was a provision made for the taking of water through said dam by means of a canal and the spilling of the same into Ochoco Creek below said dam, so the same might pass

down ,said creek to the headgate of said Combs-
Slayton ditch, you cannot find defendant liable in this
action for any failure or shortage of water in said
Combs-Slayton ditch, providing that the spillway was
made and the water caused to go through that spill-
way."

The court also charged the jury that the instruc-
tions given in the Marks case were applicable to
plaintiff's first cause of action in *Morgan* v. *Twohy
Bros. Co., post,* p. 547 (194 Pac. 686), that the in-
structions given in the Cram case were all applicable
to plaintiff's second cause of action in the *Morgan*
v. *Twohy Bros. Co.,* case; and that the same was true
of the case of *Slayton* v. *Twohy Bros. Co.*

As showing, among other things, that the cases
were tried in regard to the Table Land Ditch as
though they depended upon the right of plaintiffs to
the use of that ditch, we quote from the charge of
the court in the. Marks case as follows:

"It is essential to plaintiff's case that plaintiff show
a right to the use of Table Land Ditch to carry water
through to his lands. If plaintiff had no right to
carry water through said Table Land Ditch, he can-
not recover for any injury resulting from the destruc-
tion of said ditch.

"If you find from a preponderance of the evidence
that plaintiff had an agreement with said district for
water to be delivered from the reservoir created by
the construction of said dam, such agreement would
constitute an acquiescence and consent by plaintiff to
the construction of said dam and impounding the
waters of Ochoco Creek."

For a second cause of action plaintiff Slayton
and plaintiff Morgan and plaintiff Lafollett allege,
in effect, after adopting the formal paragraphs 1
to 4 of the first cause of action, that they are the

owners of certain lands, and vested water right appurtenant thereto in the waters of Ochoco Creek; that the dam across Ochoco Creek is at a point above the head of the Combs-Slayton Ditch where they divert water for use upon their lands. They then aver, much in the same form as in the first cause of action, that the defendant in the construction of the dam unnecessarily interfered with and interrupted the flow of water from Ochoco Creek to the lands of plaintiff during the months of March, April, May, and June, 1918; that they were thereby prevented from using such water through the Combs-Slayton Ditch; that by completing the canal a sufficient distance below the dam for water to pass to the Combs-Slayton Ditch, or by providing other means for conveying such water to plaintiffs' lands they could easily have permitted the water so to be diverted, which they unnecessarily failed to do or to provide other means for conveying such water, and willfully and purposely obstructed the flow of water to plaintiffs' lands, and appropriated said water to defendant's use and plaintiffs' damage.

Issues were raised by the answer of defendant. Defendant avers, in substance, the organization and purpose of the district, and then as follows:

### "Par. IV.

"During the years 1916 and 1917 said Ochoco Irrigation District for the purpose of erecting and maintaining a dam across the Ochoco Creek to impound all the waters thereof entered upon and appropriated lands on both sides of said creek at and adjoining the place where the dam referred to in the amended complaint is being constructed, and entered upon and appropriated all of the water and water rights in said Ochoco Creek, including any rights owned by plaintiff therein, and in the year 1917, after preparing plans therefor and submitting the same to the

State Engineer of Oregon and securing his approval thereof commenced the construction of a dam across said Ochoco Creek and continued the construction thereof, up to the present time, and is now .continuing such construction.''

That plaintiff consented to and acquiesced in the construction of the dam and the impounding and taking by the district of all the water of the creek above the headgate of the Combs-Slayton Ditch. That the district employed defendant to perform the work of construction of the dam, and pursuant thereto the defendant under the license, orders, and direction of the Ochoco Irrigation District commenced the construction of the dam after June 1, 1917, and actively continued the construction thereof until September, 1919, and that—

''In constructing said dam a channel or cut was left open through the same for the passage of the waters of said creek, and the waters of said creek did flow through the same undiminished to the headgate of the Combs-Slayton Ditch until about May 13, 1919, at which time the said District ordered and required defendant to close said channel or cut, which defendant did then pursuant to said order and requirement in the manner and at the time so ordered and required, whereby the waters of said creek were impounded by said dam and ceased to flow in the former bed of said creek below said dam.''

Defendant further avers that the plaintiffs, prior to January 1, 1918, entered into an agreement with the district for the district to deliver water to the land of plaintiffs from the ·waters impounded by the construction of the dam, and that the district, pursuant to such agreement, proceeded to take possession of the waters and after preparing plans commenced and continued the construction of said dam.

Plaintiff filed a reply, putting in issue the substance of the new matter of the answer to the second cause of action, except as to paragraph 4.

It appears from the record that about May 1, 1918, a temporary flume was constructed along the line of the old Table Land Ditch, commencing about 1,000 feet below the dam where the Table Land Ditch was partly torn up so that the same would not convey water. This was done in order that water might pass through the same, and a chute or spillway was constructed so that the water could be emptied into Ochoco Creek, and be taken into the Combs-Slayton Ditch for the use of these plaintiffs. The use of the water by these plaintiffs until May 3, 1918, is explained in the evidence hereafter quoted, which is also referred to in order that the matter may be fully understood in regard to the tearing up of the Table Land Ditch. We find at page 26 et seq. of the transcript of evidence, the testimony of R. W. Ray, a witness for plaintiffs, who was the engineer for the district, and who was acquainted with the arrangement between the district and the contractor and the carrying out of the same, and who supervised the construction work. On the cross-examination he testified as follows:

"Q. So up to May 3d the Combs-Slayton ditch users had the full creek, didn't they?

"A. Yes. * *

"Q. You say after May 3d the Combs-Slayton ditch was supplied with water from the Table Land Ditch by spilling it through this spillway you say you constructed?

"A. Yes, that and the drain from the sluicing operations.

"Q. So the water which was taken out of the Table Land Ditch by the sluicing operations went to the benefit of the Combs-Slayton ditch?

"A. Presumably so.

"Q. After the district got this deed to the Table Land Ditch, you spoke of an agreement that the owners of the Table Land Ditch had with the district in respect to keeping water flowing to their lands. I will ask you if there was any agreement between the owners of the Table Land Ditch and the district that the Table Land Ditch was to be kept intact after that deed was given?

"A. No.

"Q. Wasn't it the understanding, Mr. Rea, that that Table Land Ditch was to be torn up and a new canal built in its place?

"A. Yes; at times it must necessarily be torn up in order to carry on the construction work, and it would be impassable, you might say, to water, to all intents and purposes torn up.

"Q. Now, everybody understood that?

"A. Oh, yes.

"Q. When the deed was given?

"A. Oh, yes; it was understood.

"Q. And was not that the object that the deed was given to the district, so that they could go on the Table Land Ditch and tear it up and build this new canal in its place?

"A. Yes.

"Q. As a matter of fact, Mr. Rea, the grievance that the owners of the Table Land Ditch have been expressing was that the new canal was not built within the time they expected to have it done; wasn't that it?

"A. I think so. * *

"Q. After the deed was given there was never any understanding that they would ever get any more water through the Table Land Ditch?

"A. No.

"Q. It was to come through the new canal?

"A. Yes."

The witness further stated that he never denied Twohy Bros. Company the use of water for hydraulic work. On redirect examination the witness stated

that the Table Land Ditch was to be torn up as the work progressed at such time and in such manner as would not interfere with irrigation.

1. After the trial of the cases and having instructed the jury, Judge CAMPBELL, who presided during the trial, returned to his home and Hon. T. E. J. DUFFY received the verdict. It appears from the record that after deliberation the jury returned to the courtroom and submitted what the then presiding judge said "might be called two verdicts." While suggestions were made by counsel in regard to the verdict, the jury retired temporarily, and it appears from the remarks of counsel and of the court that the jury found the plaintiffs on the Table Land Ditch were damaged, and plaintiffs on the Combs-Slayton Ditch were not damaged. The court ruled that but one verdict should be rendered in a case, whether for plaintiff or defendant, regardless of the number of causes of action. After the jury returned to the courtroom the court informed the jury that the "verdict in the case of *Lafollett* v. *Twohy Bros. Co.,* and the verdict in the case of *Morgan* v. *Twohy Bros. Co.,* and the verdict in the case of *Slayton* v. *Twohy Bros. Co.,*" were in such form that the court could not receive them, and that they must return a verdict for one party or the other. The jury retired for further deliberation, but returned again to the courtroom for further instruction as to their verdict, when the foreman said to the court, among other things:

"Your Honor, may we be permitted to write which cause of action we find our verdict on?"

One of the jurors said:

"Your Honor, Judge CAMPBELL in giving us our instructions, instructed us first on the Marks case and

then on the Cram case. There were two separate instructions, and it would appear as though we find these same causes opposite each other in these three cases. Now, we don't know how to bring in our verdict so our meaning will be clear. We have reached a verdict but we cannot transmit our meaning to you."

The court directed the jury that, if they found for the plaintiffs, to sign a verdict for the plaintiffs, that it did not make any difference how many causes of action there were, there should be one verdict, or if they found for the defendant there should be one verdict. Afterwards the jury returned a verdict for the plaintiffs in the five cases now under consideration, but the verdict does not show upon which cause of action the verdict was based, in the cases wherein there were two causes of action. Therefore, while it is plain from the record as to the determination reached by the jury regarding the causes of action pertaining to the Combs-Slayton Ditch, the verdicts in these cases do not express which causes of action the same were based upon.

. It therefore seems to us that any discussion of legal questions pertaining to the second causes of action would be analogous to the consideration of a moot question, the facts in relation to the second causes of action having in reality been passed upon by a jury in favor of defendant.

2. It is contended on behalf of these plaintiffs that the defendant by its contract with the district "agreed to protect all propery rights of others." We are referred to paragraph 53 of that document, which reads thus:

"PROTECTION FOR EXISTING STRUCTURES.—The Contractor shall carefully protect from injury any existing buildings, foundations, fills, land, pavements,

pipes, conduits, sewers, drains, cisterns, wells, railway tracks or other works, property or structures that may be liable to injury by the work covered by this Contract, except in so far as the work of the Contract requires their modification or removal. He shall take all precautions necessary for such protection, and shall be fully responsible for, and shall make good, any injury to such works, property or structures that may occur by reason of his operations."

It is only necessary to read this stipulation to discover that it does not change the liability of the defendant to the plaintiffs, in regard to any of the issues in the cases under consideration. Under the circumstances of these cases it cannot be inferred that the Table Land Ditch could be torn up and reconstructed, according to the contract, without requiring the modification of the ditch. Nor can we conclude that the work of building a dam across Ochoco Creek could be accomplished without necessarily interrupting the flow of water in the creek.

The judgment in the present case of *Slayton* v. *Twohy Bros. Co.* is reversed.        REVERSED.

Mr. Justice McBRIDE did not sit in this case.

From Crook: JAMES U. CAMPBELL, Judge.

In Banc.

