### Romono Oolitic Stone Co., Appellant, v. Missouri Valley Bridge & Iron Company, Appellee.

1. Building and construction contracts—*construction.* Where a quarry company contracts to furnish stone for a bridge company and there is a doubt under its terms, whether the stone should be coursed to suit the convenience of the quarry company, or should be coursed subject to the approval of the bridge company, the interpretation which the parties themselves have by their conduct practically given the contract will prevail.

FOURTH DISTRICT—OCTOBER, 1912.        535

Romono Oolitic S. Co. v. Missouri V. B. & I. Co., 173 Ill. App. 534.

2. BUILDING AND CONSTRUCTION CONTRACTS—*specifications.* Where specifications given a quarry company bidding on a contract to furnish stone for a company constructing a municipal bridge, state that certain stone may be coursed to suit the convenience of the quarry company, but subject to the approval of the bridge company, and the engineers of the bridge furnish the plans after the contract is entered into, which contract provides that the stone should be cut and dressed in accordance with the plans and specifications of the engineers and should be furnished according to the course plans furnished by the bridge company and approved by the engineers, it is apparent that the parties understood and construed the bidding specifications to mean that the course plans were not fixed but were to be fixed by the engineers.

3. BUILDING AND CONSTRUCTION CONTRACTS—*specifications.* A quarry company contracted to furnish stone for a company building a municipal bridge and claimed that ambiguous specifications, under which they bid for the contract, were a part of the contract and permitted them to course certain stone to suit their convenience and that they are entitled to extra compensation on being compelled to course the stone under the specifications of the engineers of the bridge. The engineers' specifications were furnished after the contract was entered into, which contract provided that the stone should be furnished and coursed according to plans furnished by the bridge company and approved by the engineers. Letters from the quarry company to the bridge company, subsequent to the contract, indicated that they knew that the engineers' specifications were to be followed. *Held*, that under the terms of the contract and the construction placed thereon by the plaintiff, it was not entitled to recover.

4. BUILDING AND CONSTRUCTION CONTRACTS—*oral evidence.* Where a quarry company contracts in writing to furnish certain stone for a bridge company at a certain price, in an action to recover a greater amount, oral evidence that the real consideration was the greater amount and that both parties subsequently agreed that the greater amount was to be paid and that the original price was a mistake is inadmissible.

5. APPEALS AND ERRORS—*when presumed that trial court disregarded improper testimony.* Where objection is made to an offer of inadmissible evidence and there is no specific ruling made on the offer, if it appears that the court trying the case without a jury said he would not consider anything but proper evidence, it will be presumed he disregarded the improper testimony.

Appeal from the Circuit Court of East St. Louis; the Hon. M. MILLARD, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912.

Wise, Keefe & Wheeler, for appellant; R. B. Hendricks, of counsel.

Whitnel, Browning & Gillespie, for appellee; Allen C. Orrick and Nagle & Kirby, of counsel.

Mr. Justice Shirley delivered the opinion of the court.

This was an action in *assumpsit* by appellant to recover from appellee damages resulting from an alleged breach of contract. The declaration contained three special counts also the common counts. The first special count alleged a completion of the contract, and claimed the sum of $4,043.67 as the balance due which was the amount retained by appellant until the contract was completed, and as the court found for appellant on that count and rendered a judgment for the sum claimed, it is unnecessary to set it forth.

The second special count among other things averred that appellant agreed to furnish appellee all Bedford stone required for the four main piers of the Municipal Bridge which was being constructed by the City of St. Louis across the Mississippi River, cut and dressed according to the plans and specifications of the engineers of said bridge; that prior to entering into said agreement appellee furnished appellant specifications of the engineer of said bridge for appellant's examination in order that it might make a bid upon the stone which was to be furnished for the stonework of the bridge; that of said specifications clause 26 provided:

"The general form, character and details for the masonry of the piers are shown upon the drawings. In general it will consist of first class rock faced Ashlar facing, with concrete hearting, coping, pedestal blocks, and special corners and shapes will be made to detail drawings furnished by the president; the balance of the Ashlar to be coursed to suit the convenience of the quarry, but subject to the approval of the

President. Preference is hereby expressed for two foot courses.''

It was further averred that appellant in making its bid for the stone and for which said contract was afterwards made based it upon said clause 26 of the specifications; that relying upon such specifications that the Ashlar which was the courses of layers of stone with which the piers were veneered would be coursed to suit the convenience of the quarry, appellant agreed to furnish said Ashlar stone for the sum of $9.10 per cubic yard f. o. b. cars East St. Louis; that after making said contract appellee elected to change the terms of said contract in this, that instead of appellant furnishing the Ashlar to suit the convenience of the quarry appellee ordered appellant to furnish Ashlar in courses of two feet; that appellant when so ordered informed appellee that furnishing the Ashlar that way would make an extra cost of  $1.50 per cubic foot above the contract price; that appellant forwarded the Ashlar as so required and which appellee accepted and used and which amounted to the extra sum of $5,421.72.

The court (a jury being waived) found the issues raised by the second count and plea thereto in favor of appellee, and found there was nothing due appellant on that count. Error is assigned on the finding on the second count and that will be first considered.

The clauses of the contract which are material were, that the stone should be cut and dressed in accordance with the plans and specifications of the engineers and subject to the inspection, approval and acceptance of the engineers of the Municipal Bridge, and for all rock faced stone appellant should be paid $9.10 per cubic yard f. o. b. cars East St. Louis. It was further provided that the stone should be furnished in accordance with the course plans furnished by appellee and approved by the engineers.

Appellant insists that requiring it to furnish the stone in two-foot courses was not according to the written contract, which it is claimed included clause

26 of the specifications, but a departure therefrom, which necessitated the furnishing of additional labor and material for which appellant had a right to recover under the second count and also under the common counts.

Clause 26 of the specifications in evidence standing alone is somewhat ambiguous. There arises some doubt whether it is to be interpreted as providing that the stone should be coursed to suit the convenience of the quarry as claimed by appellant, or should be stone coursed subject to the approval of the president of the Municipal Bridge Company. Assuming that said clause should be regarded as entering into and being a part of the contract between the parties it is a familiar rule that in a doubtful case the interpretation which the parties themselves have by their conduct practically given the contract will prevail. Bishop on Contracts, 598. "The construction which the parties have by their acts placed on an ambiguous instrument is entitled to great if not controlling weight in determining its proper construction." Am. & Eng. Ency. 2nd Ed., Vol. 17, p. 24, and cases cited.

At the time said clause 26 of the specifications was furnished appellant, the engineers of the Municipal Bridge had not furnished the plans for the stonework in the piers. They were furnished later and after this contract between appellant and appellee was made. Appellant had clause 26 before it, and says it contracted in view of its provisions. Yet by the terms of the contract it agreed that the stone should be cut and dressed in accordance with the plans and specifications of the engineers of the bridge, and should be furnished according to the course plans furnished by appellee and approved by the engineers. It is apparent from these provisions of the contract that appellant and appellee understood and construed clause 26 to mean that the course plans were not fixed by clause 26 but were yet to be fixed by the engineers.

That this was appellant's construction of the con-

FOURTH DISTRICT—OCTOBER, 1912.     539

Romono Oolitic S. Co. v. Missouri V. B. & I. Co., 173 Ill. App. 534.

tract at that time is also quite apparent from the correspondence between the parties after the plans of the engineers providing for two-foot courses were furnished. In a letter to appellee's engineer appellant wrote: "The plans have been received and we note you have 2'0'' almost throughout. This makes it rather hard for our work and cutting would be greatly facilitated if you could make your courses, some a little greater and some a little smaller so as to allow it some leeway on the bed."

. Again appellant wrote: "We shall thank you very much for course plans above the starling coping as we are in hopes that these shall show some course of less than 2'0'' rise so we may take advantage of the way our stone works." Appellant had been advised that by the plans of the bridge all courses were two feet thick and that the engineer insisted on all courses being within an inch or two of that thickness. The contract was entered into on September 13, 1909, and these letters were written by appellant on September 30, and October 26, 1909, following. It was not until November 8, 1909, and after, that appellant made any complaint that the engineers' plans for two-foot courses were not according to the specifications. On that date it wrote to appellee that it (appellant) had requested permission of the engineers to change five courses of the upper work of the piers into six courses of lesser rise so as not to hamper it in the work; that a rigid two-foot course throughout was not according to the specifications nor to practice and custom, and asking appellee to use its good offices to get a variation in the rises. Appellee, as the contractor, did use its good offices on behalf of appellant but to no avail. Appellant, however, proceeded to fulfill the contract according to the plans. After a careful consideration of the contract in connection with clause 26 and the above correspondence we conclude appellant was not entitled to recover under the second count of the declaration, or on the common counts for the alleged breach claimed therein.

540     APPELLATE COURTS OF ILLINOIS. .

Romono Oolitic S. Co. v. Missouri V. B. & I. Co., 173 Ill. App. 534.

The third special count alleged that appellee applied to appellant to furnish the stone in the bridge piers called backing, and it was agreed that it should be furnished for the same price that was paid for the stone in the so-called McKinley bridge and the bridge at Thebes, Illinois, and that the price paid for stone used for backing in said bridges was five dollars per cubic yard; that appellant furnished 621.40 yards for which appellee was to pay five dollars per cubic yard, and that the sum of $3,266.25 was due for said stone. The evidence showed that appellee had paid appellant at the rate of $3.25 per cubic yard for 729¾ yards of said stone which was the amount furnished. The court found that was all appellant was entitled to recover for said stone and the court found the issues against appellant on that count and on the common counts for the alleged breach claimed under said count. The provisions of the written contract between the parties in reference to stone to be used as backing was as follows: "In case any stone is condemned as unfit for facing but which the engineers will accept for backing, said condemned stone is to be used as backing and the first party agrees to pay therefor at the rate of three dollars and twenty-five cents per cubic yard."

Some testimony of a witness Kessler was given over appellee's objection that before the written agreement was made appellees said it would pay the same price for the backing that was paid for backing in the McKinley bridge, and that after the contract was entered into he heard from some source that the cost in the McKinley bridge was over five dollars a yard. The court seems to have heard this subject to the objection. . Appellant then offered to prove by this witness that although the sum of $3.25 yer yard was named in the contract, that the real consideration for the backing was to be the same as that paid for the McKinley bridge and that subsequently both the representative of the appellant and appellee agreed that it was more than five dollars when $3.25 was named in the con-

tract and that that part of it was a mistake. There was no specific ruling on this offer, but as the court had said he would not consider anything but proper evidence it will be presumed he disregarded all such testimony.

The effect of the testimony was to vary the express terms of the written contract to furnish the backing at the rate of $3.25 per yard which could not be permitted under the plainest principles of the law of evidence. Appellant had been paid the full amount fixed by the written agreement and there was no error in finding it was not entitled to recover under the third count nor under the common counts.

Perceiving no error the judgment will be affirmed.

*Affirmed.*