Argued at Pendleton May 4, reversed June 8, 1920, rehearing denied January 11, 1921.

## O'NEIL v. TWOHY BROS. CO.

### (190 Pac. 306.)

**Pleading—Deed—Statement of Legal Effect—Copy as an Exhibit in Haec Verba.**

1. Where an executed deed is pleaded by plaintiff according to the legal effect which he puts upon it, and is also set out *in haec verba* as an exhibit attached to and made part of his final pleading, the deed itself prevails to the exclusion of a statement of its legal effect in the pleading.

**Evidence—Deed—Oral Agreement—Contractual Consideration.**

2. Under Section 713, L. O. L., an alleged oral agreement, pleaded as part of the consideration for a deed, and hence a contractual consideration, and not one of a monetary nature, is inadmissible to vary or add to the deed.

**Waters—Irrigation—Vested Rights—Owner may Alienate the Ditch and Retain the Water.**

3. The owner of a vested right for the irrigation of semi-arid agricultural lands by means of water from a creek drawn through a ditch may retain his water rights and alienate the ditch, the means by which he enjoyed such right, notwithstanding it is the only present means of employing the water rights.

**Waters—Irrigation—Owner Conveying Ditch—Damages for Its Destruction.**

4. Where the owner of semi-arid agricultural lands, producing crops when irrigated, had a vested water right in the waters of a creek through a certain ditch, and by deed conveyed his interest in the ditch to an irrigation district, without reservation, he could not thereafter complain of its destruction by the district's contractor or recover damages of the contractor.

**Evidence—Irrigation—Ditch—Right to Use Reserved in Deed.**

5. Where an owner of a water right by deed conveyed his interest in the ditch to an irrigation district and retained his water right,

---

2. On admissibility of parol evidence to vary, add to or alter written contracts generally, see notes in 17 L. R. A. 270; 2 Ann. Cas. 146; Ann. Cas. 1914A, 454; to vary deed, see note in 11 Am. St. Rep. 844.

he could not thereafter contradict his conveyance by parol, so as to claim the right to use of the ditch as the only means by which his water rights reserved in the deed could be enjoyed. ·

From Crook: JAMES U. CAMPBELL, Judge.

In Banc.

After alleging that the defendant is a corporation, the complaint proceeds in substance to state that at all times mentioned in the pleadings the plaintiff was the owner of certain agricultural lands in Crook County, semi-arid in their nature but capable of producing crops when irrigated; that the plaintiff is the owner of a vested water right from the year 1909 appurtenant to 250 acres of said realty and drawn from the waters of Ochoco Creek through a ditch known as the Table Land Ditch; that during the year, 1918 the defendant was engaged in constructing a dam on Ochoco Creek below the point of diversion into that ditch; and that at all said times, including the month of May and months prior thereto, there was sufficient water to subserve plaintiff's right, "and the plaintiff had the right to the use of said ditch for the purpose of conveying water therein from said creek to his said lands; * * and the defendant at all times had full notice and knowledge of plaintiff's said rights." Continuing, the plaintiff charges that in constructing the dam the defendant went upon said Table Land Ditch, tore up and destroyed the same, and in the months of February, March, April and May, 1918, "willfully, purposely, wrongfully, carelessly, negligently, unnecessarily and in violation of plaintiff's said rights, and with knowledge thereof, interfered with, interrupted, obstructed and prevented the waters of said creek from flowing into said ditch or conduit and through the same to and upon the lands of the plaintiff, and purposely and willfully diverted and conveyed there-

from water flowing therein, and caused the same to run and flow elsewhere than to and upon the lands of the plaintiff," and failed to protect the ditch from injury, with the result that plaintiff's lands are deprived of water for irrigation purposes and by reason thereof his crops were depreciated in quality and quantity to his damage in a sum alleged. The whole complaint is traversed by the answer, except the allegation respecting the corporate character of the defendant and the plaintiff's ownership and occupancy of the lands described.

In the defendant's brief on appeal we find this statement:

"Leaving aside all other pleadings, we wish to present this case upon the complaint, the denials thereof in the answer and the third affirmative answer and defense and the reply thereto."

On account of this voluntary restriction we pass the first and second affirmative defenses and take up the third. Summarizing this in part, it appears therefrom that the defendant is a corporation; that the Ochoco Irrigation District was duly organized to erect and maintain a dam across Ochoco Creek, and a canal leading therefrom for the purpose of impounding the waters and delivering the same to lands included in the district, among which tracts were those of the plaintiff; that at all those times whatever right in the waters of Ochoco Creek the plaintiff had was being exercised by him through the Table Land Ditch, in which he had an interest; and that there was no other means of conveying the waters to his land except through that ditch. Thus far the reply admits the answer under consideration. The contested part of this defense is here quoted:

"On November 21, 1917, the plaintiff, in consideration of the sum of $10,000 paid by said Ochoco Irrigation District, made, executed, and delivered to said Ochoco Irrigation District a deed of conveyance of all his right, title and interest in and to said Table Land Ditch, which deed was witnessed by two witnesses and was duly acknowledged by said plaintiff, and the same was duly recorded at page 109 of deed book 40 of the records of Crook County, Oregon; and thereupon said Ochoco Irrigation District entered upon and into possession of said Table Land Ditch and into possession of lands adjoining said Ochoco Creek, and, after preparing plans therefor and submitting the same to the State Engineer of Oregon and securing his approval thereof, constructed a dam across said Ochoco Creek and across said Table Land Ditch, and constructed said canal whereby the waters which had theretofore flowed in said river and in said ditch were dammed up and impounded and ceased to flow through the same prior to May 1, 1916, which said dam and canal and the construction thereof is the same dam and construction referred to and complained of in the complaint.

"After entering into possession of said Table Land Ditch pursuant to said deed said Ochoco Irrigation District employed defendant to construct said dam and canal, and pursuant to said employment defendant did, during the year 1917, commence construction of said dam and canal, and continued the construction thereof pursuant to said employment and under the direction of said district, until February, 1919."

In reply to the third answer and defense admits the execution of a deed to the irrigation district by the plaintiff, his wife and other parties, of date November 21, 1917, whereby in consideration of the sum of $10,000 paid by the district to the grantors they did "by these presents bargain, sell, assign, set over, and convey unto the said Ochoco Irrigation District, its successors and assigns, all our right, title and interest in and to that certain real property known and designated as the

Table Land Ditch, and all water rights, rights of way
and easements owned by the said Table Land Ditch
and the Table Land Ditch Company, a partnership,
comprised of the persons executing this conveyance,
together with all branches, laterals and extensions
thereof or connected thereto, under whatsoever name
the same may be called or designated; * * together
with rights of way across any or all of our said lands
within the district for the canals or laterals which it
may be necessary for the district to construct.'' The
following reservation appears in the deed: ·

''This conveyance does not cover any water rights
owned by the individuals making this conveyance nor
to any water right appurtenant to their individual
lands.''

The document closes with covenants of seizin, against
encumbrances, and general warranty. It is admitted
that this conveyance was executed, acknowledged,
delivered to the grantee and recorded.

The reply sets out in substance that the Table Land
Ditch was constructed and owned by a partnership
composed of certain individuals, of whom the plain-
tiff was one; that prior to the formation of the partner-
ship each of the partners had initiated a right to the
waters of Ochoco Creek, appropriated a portion there-
of for irrigating purposes, and afterwards constructed
the ditch as a partnership venture, as a means of con-
veying each separate appropriation of the water to the
lands of the several appropriators; but states that
the partnership never owned any of the water rights or
any of the waters appropriated, they being the separate
property of each appropriator and appurtenant to his
separate lands. Reciting that the deed was made for
a consideration of $10,000, with the reservation to
each member of the partnership and to each grantor

which has already been quoted, it is stated further in the reply:

"And as a part of said consideration for said deed, said Ochoco Irrigation District orally agreed with each of the grantors (and particularly with the plaintiff) that said Table Land Ditch should be thereafter continuously maintained and used by said grantors for the purpose of conveying the water appropriated by each of said grantors (including the plaintiff) in and through said ditch to the lands of each appropriator above mentioned (and including the lands of plaintiff mentioned in the complaint) and that the water appropriated by said grantors severally should be conveyed therein to the lands of each separate grantor until the irrigation works of said district should be constructed and completed."

It is averred also that at the time the defendant entered into the contract with the district to construct the dam in question the defendant well knew all of the terms and conditions mentioned in the reply, the consideration for the deed as therein alleged and the rights of the plaintiff which he claims have been violated.

A general demurrer by the defendant to the further and separate reply to the third separate answer was overruled. Afterwards the defendant moved the court for judgment on the pleadings as to the cause of action set out in the complaint, because it appears on the face of the pleadings that plaintiff is not entitled to recover herein. This also was overruled. As stated in the bill of exceptions:

"Immediately after plaintiff rested his case defendant moved the court for the entry of nonsuit, said motion being made in the following language, to wit: 'The defendant moves, at this time, the court for a judgment of nonsuit on the ground and for the reason that plaintiff has failed to make out a case against

this defendant sufficient to be presented to the jury for their determination.' ' '

This was overruled and the defendant excepted. The trial was concluded by a verdict for the plaintiff and against the defendant, and from the ensuing judgment the defendant appeals.     REVERSED.

For appellant there was a brief over the names of. *Messrs. Malarkey, Seabrook & Dibble, Mr. James G. Wilson* and *Mr. G. L. Barnier,* with an oral argument by *Mr. E. B. Seabrook.*

For respondent there was a brief over the names of *Mr. William H. Wilson* and *Mr. N. G. Wallace,* with an oral argument by *Mr. Wilson.*

BURNETT, J.—1. In whatever form the questions in dispute may have been considered, they all turn upon the construction to be given the deed already mentioned. For the purposes of this opinion that instrument may be set down as an executed contract. It is pleaded by the plaintiff first according to the legal effect which he puts upon it and likewise is set out *in haec verba* as an exhibit, attached to and made part of his final pleading. In such a case the instrument itself prevails, to the exclusion of the statement of its legal effect in the pleading of which it is a part: *Haworth* v. *Jackson,* 91 Or. 272 (178 Pac. 926).

2. We here set down the oft-quoted Section 713, L. O. L.:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing," —except in certain cases not here involved.

The alleged oral agreement is pleaded as part of the consideration for the deed mentioned. It is therefore a contractual consideration, and not one of a monetary nature, and from *Sutherlin* v. *Bloomer*, 50 Or. 398 (93 Pac. 135), continuing through such cases as *Oregon Mill Co.* v. *Kirkpatrick*, 66 Or. 21 (133 Pac. 69); *Muir* v. *Morris*, 80 Or. 378 (154 Pac. 117, 157 Pac. 785), and *Elliott Contracting Co.* v. *Portland*, 88 Or. 150 (171 Pac. 760), the rule has been stated thus:

"The authorities are practically unanimous in holding that, where the statement in the written instrument as to the consideration is of a contractual nature, as where the consideration consists of a specific or direct promise by one of the parties to perform certain acts, it cannot be changed or modified by parol or extrinsic evidence. A party has a right to make the consideration of his agreement of the essence of his contract, and, when this is done, the consideration for the contract, with reference to its conclusiveness, must stand upon the same footing as its other provisions, and accordingly cannot be affected by the introduction of parol or extrinsic evidence."

See, also, *Interior Warehouse Co.* v. *Dunn*, 80 Or. 528, 535 (157 Pac. 806). The reply is a plain attempt to import into the agreement embodied in the deed additional particulars resting wholly in parol, and which the statute quoted expressly forbids, saying strictly that "no evidence of the terms of the agreement other than the contents of the writing" shall be admitted.

3-5. It was competent, as both parties admit in their arguments, for the plaintiff to retain his water right and alienate the means by which he enjoyed it. He did this by his deed, and conveyed his interest in the Table Land Ditch to the district without reservation. Hence, at the time of the grievances complained of, to wit, the tearing up and destruction of the con-

duit, he had no right or interest therein upon the invasion of which he might predicate damage. As the district owned the ditch, it rightfully could, as it did, contract with the defendant to tear it up and build another on its site, all without hindrance or objection by the plaintiff. The complaint avers that—

"During all of said time the plaintiff had the right to the use of said ditch for the purpose of conveying water therein from said creek to his said lands."·

But his deed contradicts this averment. The plaintiff's own pleading in reply showed that he had no cause of action. Called upon to prove his traversed allegation of the right to use the ditch, the proof he offered contradicted his statement. He argues that the reservation of the individual water rights as specified in the deed amounts to a reservation also of the ditch as the only means by which those rights can be enjoyed. Both parties, however, conceded it to be the law, and it is well supported by the precedents, that the ditch or other conduit carrying water may be conveyed separate from the water rights which it serves. The fact that the ditch constituted the only present means of enjoying the water rights does not destroy its alienability. In fact, the plaintiff by the very terms of his deed separated the ditch from the water right, and he cannot be heard to contradict his conveyance by parol.

However the question was treated, whether by demurrer to the reply, motion for judgment on the pleadings or motion for nonsuit, the ruling should have been in favor of the defendant. The Circuit Court was in error in denying the objections thus interposed by the defendant. The judgment is therefore reversed.     REVERSED.   REHEARING DENIED.