Argued at Pendleton October 26, 1920, reversed January 11, 1921.

# MARKS *v.* TWOHY BROS. CO.

### (194 Pac. 675.)

**Evidence—Parol Evidence Rule One of Substantive Law.**

1. Section 713, Or. L., making evidence of an agreement other than the contents of the writing to which it was reduced by the parties inadmissible with certain exceptions, and Section 798, creating a presumption of the truth of facts recited in a written instrument as against the parties to the instrument, embody a well-established rule of common law, which is one not of evidence merely, but of substantive law.

**Evidence—Parol Evidence Rule Does not Apply to Receipts.**

2. As a general rule, the exclusion of parol or extrinsic evidence to contradict written instruments does not apply to mere receipts, or writings which are in the nature of receipts, which may be contradicted, varied, or explained.

**Evidence—Recital of Payment may be Contradicted or Varied.**

3. A recital in a written instrument as to the payment of the consideration is in the nature of a receipt, and may be contradicted or explained by parol or extrinsic evidence, unless such contradiction would defeat some substantial and contractual provision of a valid written instrument.

**Evidence—Contradicting Consideration Clause Inadmissible if It Defeats Deed.**

4. Parol evidence, offered to contradict the consideration clause of a conveyance, which, in effect, defeats the operation of the conveyance or lessens its effect, or incorporates therein a reservation not enumerated in the conveyance, is inadmissible.

**Evidence—Parol Evidence Inadmissible to Show Contractual Consideration for Conveyance of Ditch.**

5. Parol evidence that the parties to a conveyance of a ditch, which expressly reserved therefrom the water right which had flowed through the ditch, agreed as part of the consideration that the grantee should maintain the ditch fit for conveyance of the waters reserved, adds a contractual consideration to the moneyed consideration stated in the deed, which nullifies the rights to the ditch conveyed, and is therefore inadmissible.

**Evidence—Contractual Consideration cannot be Added to Money Consideration.**

6. A purely money consideration mentioned in a written instrument which is complete on its face cannot be amplified by parol evidence so as to ingraft into the instrument an additional executory or contractual consideration, which would impose on one of

---

1. On the general rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note in 17 L. R. A. 270. On parol evidence to vary deed, see note in 11 Am. St. Rep. 844.

the parties an affirmative obligation, of which there is no indication or suggestion in the writing.

**Evidence—Parol Evidence Admissible to Show Want or Failure of Consideration.**

7. Parol evidence to show an entire absence or a partial or total failure of consideration is not within the rule excluding such evidence to vary or contradict the terms of a written instrument.

**Waters and Watercourses—Ditch can be Conveyed Separate from Waters Carried Therein.**

8. The owners of a ditch may convey the ditch to another, separate from their right to the water for the irrigation of their lands which had been previously carried in the ditch.

**Waters and Watercourses—Reservation of Water Right from Ditch Conveyance Held not to Include Right to Carriage of Waters.**

9. Where the owners of an irrigation ditch conveyed it to an irrigation district to enable the latter to construct its canal along the line of the ditch, which necessitated destruction of the ditch, a reservation of the water right of grantors did not carry with it the right to use the ditch to convey the reserved water to the lands of grantors.

**Trespass—Authority of Irrigation District Giving Contractor Right to Interrupt Flow is a Defense.**

10. In an action against a contractor for interference with the flow of water to plaintiff's land through an irrigation ditch, the authority of irrigation district, giving contractor the right to interrupt the flow, is a defense, if the title of the district to the ditch was superior to that of the land owner.

From Crook: JAMES U. CAMPBELL, Judge.

In Banc.

This is an action for damages. The cause was tried by the court and a jury, a verdict being rendered in favor of plaintiff. From a judgment entered thereon defendant appeals.

By stipulation of the parties one brief is submitted for five cases, namely: *Marks* v. *Twohy Bros. Co.* (this case); *Powell* v. *Twohy Bros. Co., post,* p. 546 (194 Pac. 685); *Lafollett* v. *Twohy Bros. Co., post,* p. 545 (194 Pac. 685); *Slayton* v. *Twohy Bros. Co., post,* p. 535 (194 Pac. 682); and *Morgan* v. *Twohy Bros. Co., post,* p. 547 (194 Pac. 686). The several cases arise out of the following facts, as substantially stated in the briefs:

In the year 1915 there was organized under the provisions of Chapter XIV, Title XLI, of Oregon Laws a municipal corporation in Crook County, Oregon, known as the Ochoco Irrigation District, the objects and purposes of which were to dam Ochoco Creek, a tributary of Crooked River, and thereby create a reservoir and impound therein the waters of Ochoco Creek, and distribute such waters through canals and ditches for irrigation purposes. At the time of the organization of the district there were in existence two irrigation ditches or canals which received their supply of water from Ochoco Creek, one known as the Table Land Ditch, sometimes referred to as Highline Ditch, and the other Combs-Slayton Ditch. The intake of the Table Land Ditch was about a mile upstream or east of the dam site, from which point the ditch followed the north bank of the creek until it reached a bench or table land north of Ochoco Creek, and thence was constructed along the bench and served the lands thereon with water. The intake of the Combs-Slayton Ditch was about one-half mile downstream from the dam site, from which point the ditch followed the low lands on the north side of Ochoco Creek and supplied such lands with water.

In 1918, and the year prior thereto, all of the plaintiffs were users of water for irrigation purposes from Ochoco Creek, all of them utilized what is known as the Table Land Ditch to convey water from Ochoco Creek to their irrigated lands, and three of the plaintiffs also used the Combs-Slayton Ditch for the purpose of conveying water to a portion of their irrigated lands. In cases where water was conveyed through both the Table Land Ditch and the Combs-Slayton Ditch, two causes of action are set forth in the complaint; but in the cases where water was used

through the Table Land Ditch, only one cause of action is stated. Except in this regard the pleadings in all of the cases are practically the same. The Ochoco Irrigation District entered into a contract with the defendant, whereby it agreed to perform the work and furnish the material necessary in the construction of the dam and canal for the district.

Seven cases were instituted against the defendant. In three of these, namely, *O'Neil* v. *Twohy Bros. Co., ante,* p. 481 (190 Pac. 306), the Marks, and Powell cases, the owners of lands supplied by the Table Land Ditch alone are claiming damages to those lands. In one, the Cram & Cram case, the owner of lands was supplied by the Combs-Slayton Ditch alone. In the latter case the jury found a verdict in favor of the defendants. Three of the actions were by owners of land supplied by both the Table Land Ditch and the Combs-Slayton Ditch, in which two separate causes of action are stated in the complaint. These are the Lafollett, Slayton, and Morgan cases. The first causes of action in the three last-named cases were to recover damages to the lands supplied by the Table Land Ditch, caused by facts substantially the same as alleged in the O'Neil, Marks, and Powell cases. The first causes of action in the Lafollett, Slayton, and Morgan cases are the same, relating to the Table Land Ditch. The second causes of action set out in the complaint in the three last-named cases are to recover damages to lands supplied by the Combs-Slayton Ditch, and, as asserted in defendant's brief, were caused by the facts alleged practically the same as in the Cram & Cram case.

## COMPLAINT IN THE MARKS CASE.

Plaintiff alleged the corporate character of the defendant, the organization of the irrigation district,

and the object and purposes thereof; the entering into the contract by the district with the defendant for the construction of the dam and canal; the preparation of plans therefor; the commencement and continuation of the work by defendants; and the plaintiff's ownership of certain lands in Crook County, semi-arid in character, but capable of producing agricultural crops when irrigated. Plaintiff further avers that he is the owner of a vested water right, dating from the year 1909, appurtenant to the lands, which water is taken from Ochoco Creek through a ditch known as the Table Land Ditch in sufficient quantity to properly irrigate all of his lands which are under cultivation, and since 1909, up to 1918, the plaintiff and his predecessors in interest have continually enjoyed and used such water right and have irrigated such lands and raised profitable crops thereon; that during the months of March, April, and May there was sufficient amount of water in Ochoco Creek to irrigate plaintiff's lands, and was necessary therefor; "and during all of said time the plaintiff had the right to the use of said ditch for the purpose of conveying water therein from said creek to his said lands for the purpose of irrigating the same and the crops thereon, and the defendant at that time had full notice and knowledge of plaintiff's said rights. Plaintiff then states:

"That in the prosecution of said work and the construction of said dam and canal leading therefrom it was unnecessary for the defendant to interrupt or prevent the flow of the water from said Ochoco Creek to the lands of the plaintiff during said months, but by using ordinary care and diligence the defendant could have prosecuted said work and constructed said dam and canal leading therefrom in such manner and at such time as to permit the water to be diverted from said Ochoco Creek and carried and conveyed to the lands of the plaintiff and used in irrigating his

lands either through the Table Land Ditch or by temporary flume constructed for such purpose, or by the completion of such portion of said canal below said dam as would have permitted said water to flow therein to the lands of the plaintiff, but the defendant failed to use ordinary care or diligence in the prosecution of said work or the construction of said dam or canal, and failed to do any of the things above specified, but, on the contrary, the defendant went upon said Table Land Ditch and tore up and destroyed the same, and failed to construct an adequate temporary flume, or to complete the necessary portion of said canal to permit the water to be diverted from said creek, and conveyed therein to the lands of the plaintiff for irrigating the same, and defendant willfully, purposely, carelessly, and unnecessarily in the performance of said work interfered with, interrupted, obstructed, and prevented the water in said creek from flowing to the lands of the plaintiff, and willfully, purposely, and unnecessarily obstructed the flow of said water to plaintiff's lands, and caused the same to flow elsewhere than upon the lands of the plaintiff, and appropriated and converted said water to the defendant's use, whereby said water was prevented from flowing to or upon the lands of the plaintiff, and the plaintiff thereby was deprived of the use thereof for irrigating his crops in said months of March, April, and May, 1918, whereby the crops upon plaintiff's land were rendered less abundant, and were stunted and retarded in their growth, and were damaged and injured and lessened in quantity and depreciated in quality, and were permanently injured and damaged, all to the loss, injury, and damage of the plaintiff in the sum of seventeen hundred dollars ($1700).''

The defendant by its answer admitted the incorporation of defendant, the organization of the irrigation district with its objects and purposes, plaintiff's ownership of the land, and denied all the other material allegations of the complaint. It then set forth two

separate defenses, in effect, the organization of the irrigation district, its objects and purposes; that the lands of plaintiff are within the district; that there was no other way of conveying water to plaintiff's lands than through the Table Land Ditch. It then, averred as follows:

"On November 21, 1917, the plaintiff, in consideration of the sum of $10,000 paid by said Ochoco Irrigation District, made, executed and delivered to said Ochoco Irrigation District a deed of conveyance of all his right, title, and interest in and to said Table Ditch, which deed was witnessed by two witnesses, and was duly acknowledged by said plaintiff and the same was duly recorded at page 109 of Deed Book 40 of the Records of Crook County, Oregon; and thereupon said Ochoco Irrigation District entered upon and into possession of said Table Land Ditch and into possession of lands adjoining said Ochoco Creek, and after preparing plans therefor and submitting the same to the State Engineer of Oregon and securing his approval thereof, constructed a dam across said Ochoco Creek and across said Table Land Ditch, whereby the waters which had theretofore flowed in said river and in said ditch were dammed up and impounded and ceased to flow through the same, which said dam and the construction thereof is the same dam and construction referred to and complained of in the amended complaint."

Continuing, defendant asserted that the district employed it to construct the dam, and pursuant to such employment during the year 1917, defendant commenced the construction of the dam, and continued the same under the direction of the district until February, 1919; and that the defendant did the work in the manner and at the times provided and required by the contract between it and the district, except as to a change in the date of completion, May 1, 1918,

which was necessitated by the change in the plan of the work made by the district.

Defendant further averred that the district agreed to furnish plaintiff's lands with water through the new canal which was to be built, and that plaintiff at all times was aware that the Table Land Ditch was to be and was destroyed so the district's canal might be built upon the same location, and plaintiff acquiesced therein.

Plaintiff, by his reply, admits part of the allegations of the answer, and denies a part, asserting that the dam was constructed as alleged in plaintiff's complaint. He admits the execution of the deed mentioned in defendant's answer, and avers that the Table Land Ditch was constructed and owned by a partnership composed of plaintiff and other parties, each of whom owned individual rights to the waters of Ochoco Creek appurtenant to his lands, and each used the Table Land Ditch for the purpose of conveying water from Ochoco Creek to the point where each diverted water upon his lands, and that the partnership owned no water right. The gist of the reply in regard to the deed is that—

The "partnership conveyed to said Ochoco Irrigation District, the said Table Land Ditch above mentioned for a consideration of ten thousand dollars ($10,000), and the further consideration hereinafter mentioned, and in and by the terms of said deed each member of said partnership and each grantor in said deed reserved his right to the waters of Ochoco Creek, which had been by him appropriated as hereinbefore alleged, and which were appurtenant to his respective lands, and as a part of the consideration for said deed said Ochoco Irrigation District orally agreed with each of the grantors in said deed (and particularly with the plaintiff) that said Table Land Ditch should be thereafter continuously maintained and used by

said district for the purpose of conveying the water appropriated by each of said grantors (including the plaintiff) in and through said ditch to the lands of each appropriator above mentioned (and including the lands of plaintiff mentioned in the complaint) and that the water appropriated by said grantors severally should be conveyed therein to the lands of each separate grantor until the irrigation works of said district should be constructed and completed; and that thereafter the lands of each grantor should be supplied by said irrigation district with water to the extent of the appropriation of each grantor, and the defendant well knew all of the terms and conditions above mentioned and the consideration for said deed as herein alleged, and the rights of the plaintiff at the time that the defendant entered into the contract with said Ochoco Irrigation District to construct said dam in Ochoco Creek, and well knew said terms and conditions and said consideration for said deed at and during all of the time that the defendant was performing work in the construction of said dam, and at the time that the defendant obstructed and interfered with the flow of the water in said district to the lands of plaintiff as alleged in the complaint of the plaintiff.''

Defendant demurred to the reply on the ground that the alleged oral agreement was a variance and setting aside of the terms of the deed. Defendant also filed a motion for judgment on the pleadings because of the admissions in the reply that the deed had been given, and that what defendant had done was done as the servant, employee and contractor of the district, pursuant to the contract to build the dam and canal. The demurrer and motion were overruled. Plaintiffs by their conveyance, ''bargain, sell, assign, set over, transfer and convey unto the said Ochoco Irrigation District, its successors and assigns, all our right, title and interest in and to that certain real property known and designated as the Table Land Ditch, and

all water rights, rights of way and easements owned
by the said Table Land Ditch, and the Table Land
Ditch Company, a partnership, comprised of the per-
sons executing this conveyance, together with all
branches, laterals and extensions thereof or connected
thereto, under whatsoever name the same may be
called or designated.''

At the close of plaintiff's testimony defendant
moved for a nonsuit. At the close of the case it re-
quested the court to instruct the jury to return a ver-
dict for the defendant. These motions were also
overruled.                                    REVERSED.

For appellant there was a brief over the names of
*Messrs. Malarkey, Seabrook & Dibble, Mr. James G.
Wilson* and *Mr. G. L. Bernier,* with an oral argument
by *Mr. E. B. Seabrook.*

For respondent there was a brief with oral argu-
ments by *Mr. W. H. Wilson* and *Mr. N. G. Wallace.*

BEAN, J.—This court, in the case of *O'Neil* v.
*Twohy Bros. Co., ante,* p. 481 (190 Pac. 306), held
that the trial court erred in overruling the demurrer,
the motion for judgment on the pleadings, the motion
for a nonsuit and the request for a directed verdict.
The O'Neil case is now pending upon a petition for a
rehearing, and we are earnestly requested to review
again the questions decided by the opinion in that
case. The issues in the O'Neil case are the same as
those in the case of *Marks* v. *Twohy Bros. Co.,* now
under consideration.

As we understand the record, there is no contro-
versy in regard to the following facts, namely: The
Ochoco Irrigation District employed the plaintiff to
construct the dam across Ochoco Creek and to build

the main canal leading from the dam downstream. The first one and one-half miles of this main canal is located upon the exact site of the Table Land Ditch and upon a steep hillside, so that in order to construct the main canal the Table Land Ditch at this place must necessarily be destroyed. The several plaintiffs were the owners of the Table Land Ditch jointly, and each of them was individually the owner of a vested right to a certain quantity of water from Ochoco Creek appurtenant to his lands. They carried the water to their respective lands through their joint property, the Table Land Ditch. In view of the fact that the district's main canal could not be constructed without tearing up and destroying the Table Land Ditch, the district purchased from the plaintiffs in the several cases mentioned, the Table Land Ditch, and in consideration of the sum of $10,000 a deed of conveyance was executed by the several plaintiffs to the Ochoco Irrigation District, conveying to it the title in fee to the Table Land Ditch with covenant of warranty of the title of the ditch to the district. In the deed the several plaintiffs reserved to themselves their several individual water rights appurtenant to their respective lands. The reservation clause in the deed appears as follows:

"This conveyance, does not cover any water rights owned by the individuals making this conveyance nor to any water right appurtenant to their individual lands."

The complaint of plaintiff Marks is based upon the right to use the Table Land Ditch during the season of 1918, for the purpose of conveying the water, to which he had a right, upon his lands. It will be noticed that plaintiff alleges that during all of that season there was a sufficient supply of water in

Ochoco Creek to irrigate plaintiff's lands and crops during the months of March, April, and May, and that during all of that time plaintiff had the right to the use of such ditch for the purpose of conveying water from the creek to his lands for irrigation.

If the conveyance of the Table Land Ditch by the several plaintiffs to the Ochoco Irrigation District transferred all of the right, title, and interest of the plaintiffs in that ditch, of course the claim of plaintiff, as made in his complaint, cannot be sustained. Or, as stated in the brief of plaintiffs:

"The effect of this deed is the principal question raised upon this appeal in the causes of action involving the right of the several plaintiffs to flow water through the Table Land Ditch."

The validity of the deed is not in question. It is complete upon its face. No ambiguity of the instrument is suggested or apparent. It may be stated that we are not dealing with a collateral agreement of the parties which does not affect the conveyance, nor with a question of fraud, accident or mistake.

Admitting the execution of the deed from the plaintiffs to the district, in order to overcome the force of the conveyance plaintiff asserts that—

"As a part of the consideration for said land said Ochoco Irrigation District orally agreed with each of the grantors in said deed (and particularly with the plaintiff) that said Table Land Ditch should be thereafter continuously maintained and used by said district for the purpose of conveying the water appropriated by each of said grantors (including the plaintiff) in and through said ditch to the lands of each appropriator above mentioned (and including the lands of plaintiff mentioned in the complaint), and that the water appropriated by said grantors severally should be conveyed therein to the lands of each

separate grantor until the irrigation works of said district should be constructed and completed.''

It is maintained by the defendant that the deed pleaded in its answer and introduced in evidence cannot be varied, contradicted, enlarged, or diminished by parol. It is the contention of plaintiffs that as the written instrument recites a monetary consideration, only oral testimony is admissible to show the true consideration.

1. The consideration mentioned in the deed is $10,000. The additional consideration pleaded in plaintiff's reply, and sought to be shown by oral evidence, is an executory or contractual consideration, in effect an additional reservation of the right to the use of the Table Land Ditch by plaintiffs. We quote Section 713, Or. L., in full:

''When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases:—

''1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

''2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in Section 717, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties.''

Section 798, Or. L., as far as pertinent, reads thus:

''The following presumptions, and no others, are deemed conclusive: * *

''3. The truth of the facts recited from the recital in a written instrument, between the parties thereto,

their representatives or successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration; * * . ''

It is a well-established rule of the common law, which has been embodied in the statutes of a number of the states, including Oregon, that when any grant or other disposition of property, or any contract, agreement, or undertaking has been reduced to writing, and is evidenced by a document, such document cannot be contradicted, altered, added to, or varied by parol or extrinsic evidence. The rule is founded on the long experience that written evidence is so much more certain and accurate than that which is based on memory only that it would be unsafe, when the parties have expressed the terms of their agreement in writing, to admit weaker evidence to control and vary the stronger, and thereby show that the parties intended a different contract from that expressed in the written memorial signed by them. It is obvious that but for the rule, written instruments would soon come to be of little value if their explicit provisions could be varied, controlled, or superseded by parol evidence, and it is plain that a different rule would greatly increase the temptations to commit perjury. According to the modern and better view, the rule which prohibits the modification of a written contract by parol is one not of evidence merely but of substantive law: 22 C. J., p. 1070, § 1380.

2. As indicated by our statute, the rule has its exceptions. A recital in a written instrument as to the payment of the consideration is in the nature of a receipt. As a general proposition, the rule excluding parol or extrinsic evidence to vary or contradict written instruments does not apply to mere receipts,

which are usually general in their expressions; but these may be contradicted, varied, or explained. The rule that parol evidence is admissible to explain or contradict receipts applies to all writings which are in the nature of receipts, even though they might not technically be termed such: C. J., p. 1135, § 1520, and p. 1137, § 1521.

3, 4. A recital in a written instrument as to the payment of the consideration is merely in the nature of a receipt, and may be contradicted or explained by parol or extrinsic evidence, unless such contradiction would have the effect of rendering nugatory some substantial and contractual provision of a valid written instrument. In the case of a conveyance like the one under consideration from plaintiffs to the Ochoco Irrigation District, where the grantors, or one claiming under them, attempt by contradicting the consideration clause, to defeat the operation of the deed, or to lessen the force or effect thereof, or to incorporate therein a reservation of a right or interest in the property conveyed, which reservation is not enumerated in the conveyance, such parol or extrinsic evidence is inadmissible to vary, contradict, enlarge or diminish such deed: *Finlayson* v. *Finlayson,* 17 Or. 347, 354 (21 Pac. 57, 11 Am. St. Rep. 836, 3 L. R. A. 801); *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135); *Douglas County Bank* v. *Bloomer,* 50 Or. 561 (93 Pac. 141); *Oregon Mill Co.* v. *Kirkpatrick,* 66 Or. 21 (133 Pac. 69); *Muir* v. *Morris,* 80 Or. 378 (154 Pac. 117, 157 Pac. 785); *Elliott Contracting Co.* v. *City of Portland,* 88 Or. 150 (171 Pac. 760); *Blake-McFall Co.* v. *Wilson, post,* p. 626 (193 Pac. 902); 22 C. J., p. 1167, § 1562. Upon this point the rule is stated thus in 22 C. J., § 1566:

"Where the effect of parol evidence contradicting the consideration expressed in the instrument or showing the true consideration to be different therefrom would be to change or defeat the legal operation and effect of the instrument, or to add new matter to an agreement complete upon its face, the evidence is not admissible; for in such case it comes within the rule which forbids the introduction of parol evidence to vary, contradict, or defeat a written instrument, and not within the exception to that rule that parol evidence is admissible for the purpose of contradicting or showing that the true consideration is other and different from that expressed in the writing."

5. The considerations recited in the conveyance in question are monetary on the one side and contractual on the other. The consideration moving from the grantee to the grantors is purely monetary. That moving from the grantors to the grantee is contractual; it is a conveyance of all the right, title, and interest of the grantors in the Table Land Ditch. If the grantors, under the guise of varying the monetary consideration, can ingraft new terms into the instrument by parol evidence, and reserve to themselves the right to the use of the Table Land Ditch during the season of 1918, they could in the same manner reserve to themselves the right to its use for a longer period of five or fifty years, or defeat the purpose of the conveyance.

6. Stated in general terms, a purely money consideration, mentioned in a written instrument, which is complete upon its face, cannot be amplified by parol evidence so as to ingraft into the instrument an additional executory or contractual consideration. Where the written instrument appears to be perfect and complete, the terms of a contractual consideration cannot be contradicted or varied by parol: *Vulcan Iron Works Co.* v. *Roquemore,* 175 Fed. 11 (99 C. C. A.

98 Or.—34

77); *Leftkovitz* v. *Gadsden First Nat. Bank,* 152 Ala. 521, 529 (44 South. 613); *Ashley etc. R. Co.* v. *Cunningham,* 129 Ark. 346 (196 S. W. 798); *Harding* v. *Robinson,* 175 Cal. 534 (166 Pac. 808); *Brosseau* v. *Jacobs' Pharmacy Co.,* 147 Ga. 185 (93 S. E. 293); *Romono Oolitic Stone Co.* v. *Missouri Valley Bridge etc. Co.,* 173 Ill. App. 534; *Indianapolis Union Ry. Co.* v. *Houlihan,* 157 Ind. 494 (60 N. E. 943, 54 L. R. A. 787); *Slump* v. *Blain,* 177 Iowa, 239 (158 N. W. 491); *Trice* v. *Yoeman,* 60 Kan. 742 (57 Pac. 955); *Egan* v. *Hotel Grunewald Co.,* 134 La. 739 (64 S. W. 698); *Chaplin* v. *Gerald,* 104 Me. 187 (71 Atl. 712); *Farquhar* v. *Farquhar,* 194 Mass. 400 (80 N. E. 654). As more fully stated in 22 C. J., page 1171, Section 1569:

"Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of money consideration, and is of a contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part, for a party has the right to make the consideration of his agreement of the essence of the contract, and when this is done the provision as to the consideration for the contract must stand upon the same plane as the other provisions of the contract with reference to conclusiveness and immunity from attack by parol or extrinsic evidence. For the same reason, where the writing is complete upon its face, an additional executory consideration cannot be shown by parol, or, as it is sometimes expressed, new terms cannot be engrafted into an agreement by parol under the guise of varying the consideration."

Undoubtedly for some purposes parol evidence may be introduced to explain or amplify the consideration

mentioned in a written instrument. However, this exception to the general rule will not permit proof of an oral agreement for the purpose of imposing an affirmative obligation on one of the parties to the written memorandum of which there is no indication or suggestion in the writing. If such evidence were permitted to be introduced on the theory of an inquiry into the consideration of the conveyance, it is obvious that the rule respecting the finality of written contracts would be abrogated: *Watkins Salt Co. v. Mulkey,* 225 Fed. 739, 744 (141 C. C. A. 11). This was plainly announced in *Howe* v. *Walker,* 4 Gray (70 Mass.), 318, when the court speaking through Mr. Justice THOMAS said:

"Nor can you, under the guise of proving by parol the consideration of a written contract, add to or take from the other provisions of the written instrument. This would practically dispense * * with that sound rule of the common law, which finds in the written contract the exclusive and conclusive evidence of the intent and agreement of the parties, and will not suffer such written contract to be varied or affected by any contemporaneous parol agreement."

In *Castleman-Blackmore Co.* v. *Pickeral etc. Co.,* 163 Ky. 750, 758 (174 S. W. 749), it is said:

"The rule that oral evidence is admissible to vary the consideration, stated in a written contract, should not be extended to include every motive that prompts the making of a contract. Here the alleged undertaking on the part of the defendant, though related in a way to the consideration, was purely contractual in its character, and cannot be regarded as a part of the consideration within the meaning of the rule relied on. Where a contract is valid and complete in itself parol evidence of other terms should not be permitted under the mere guise of showing consideration."

Any discordant notes which may have been sounded are but evasions of the rule herein applied. The rule still stands, and is almost universally recognized: See note to *Green* v. *Batson,* 5 Am. St. Rep. 194, at page 201.

7. Parol evidence, to show an entire absence or a partial or total failure of consideration, is not within the rule which excludes such evidence to vary or contradict the terms of a written contract: 10 R. C. L., p. 1052, § 247.

The case of *Houston* v. *Greiner,* 73 Or. 304 (144 Pac. 133), comes within the principle last announced. This case is claimed by counsel for plaintiff to be contrary to the ruling announced in *O'Neil* v. *Twohy Bros. Co., ante,* p. 481 (190 Pac. 306), and herein *Houston* v. *Greiner* was a suit to set aside a deed, upon the grounds: (1) Failure of consideration; (2) mental incapacity of the grantor; (3) undue influence and coercion. Fraud on the part of the grantee was set forth in the complaint, as appears from an examination of the record in the case. The suit was decided upon the first point mentioned. There was no money consideration passed for the deed sought to be set aside. It was executed in consideration of an agreement for maintenance. The validity of the deed was in dispute. The question involved came squarely within the exception mentioned in subdivision (2) of Section 713, Or. L., as well as the rule above stated in regard to the admissibility of parol evidence to show an absence or failure of consideration for a contract. The opinion in that case is not in conflict with the rule in *O'Neil* v. *Twohy Bros. Co., ante,* p. 481 (190 Pac. 306), and in the present case. The announcements of this court in regard to the question under consideration in the case

at bar are in consonance with the overwhelming authority of precedents in other states.

It is plain from all of the circumstances of the case that it was the plan of the irrigation district, which was organized in the interest of the plaintiffs, to change the irrigation system then employed by the several plaintiffs, and to erect a dam across Ochoco Creek and construct a canal leading therefrom, a portion of which was on the site of the Table Land Ditch. In order to do this it was absolutely necessary to destroy the Table Land Ditch. That was the reason of the purchase of the ditch and the execution of the conveyance mentioned. Plaintiffs by their suits, in so far as the same pertain to the Table Land Ditch, are seeking to nullify the effect of their conveyance.

8. Doubtless by means of the reservoir created by the construction of the dam, the use by the plaintiffs of the water from the creek, the right to which they reserved in the conveyance of the ditch, would be extended later in the irrigation season and increased by their arrangement with the district. It is not an uncommon thing for water which has been regularly appropriated and used for purposes of irrigation to be conveyed in a ditch or canal other than the one in which it is at first appropriated and conveyed. It is not claimed, as we understand, that the water rights and the right to the use of the Table Land Ditch could not be separated and the ditch sold and conveyed separately without the water rights changing ownership. Plaintiffs cannot part with the ownership of their ditch and also keep it. The fact that there was no other means of conveying water to their lands during the time of the construction of the district canal does not change the legal effect of the deed.

9. It is argued by counsel for plaintiff that the reservation of the water right in the deed carried with it the right to the use of the ditch for the purpose of conveying the water to plaintiff's land; but this cannot be conceded. Under the circumstances of this case, if under any, the ditch cannot be said to be appurtenant to the water or water right.

10. Where a person enters upon property under the right, authority and orders of another, as the defendant asserts it entered upon the Table Land Ditch under the authority of the Ochoco Irrigation District, and in an action against defendant, Twohy Bros. Company, by plaintiff for trespass it justifies under the district, it becomes a question as to whose right and title is the better, that of plaintiff or that of the irrigation district, under the orders and authority of which the entry was made. If the irrigation district's title is the better, entry under its authority is a complete defense; *Logan* v. *Vernon & Co.*, 90 Ind. 552; *Gault* v. *Jenkins*, 12 Wend. (N. Y.) 488; *Danforth* v. *Briggs,* 89 Me. 316 (36 Atl. 452); *Goetchins* v. *Sanborn*, 46 Mich. 330 (9 N. W. 437); *Carrier* v. *Carrier*, 85 Conn. 203 (82 Atl. 187).

We see no necessity of alluding to the statute of frauds, or the right of eminent domain, which are referred to in the briefs.

It follows that the causes of action pertaining to the Table Land Ditch cannot be maintained. The trial court erred in overruling the demurrer to the reply, and denying the motion for judgment on the pleadings, and the motion for nonsuit in the present case of *Marks* v. *Twohy Bros. Co.*

The judgment of the lower court will therefore be reversed.                                              REVERSED.

Mr. Justice MCBRIDE did not sit in this case.